**Max A. EAGLESTEIN and Mildred Eaglestein, Appellants,**

v.

**PACIFIC NATIONAL FIRE INSURANCE COMPANY, a Corporation, Respondent.**

No. 23920.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Terrance W. Imes, Kansas City, for appellants.

Knipmeyer, McCann & Millett, Glenn E. McCann and Joseph H. Moore, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a suit on an insurance policy covering a dwelling house. The facts are

not in substantial dispute and only one question is presented by the appeal. Plaintiffs had a verdict for $3,000. The court set aside the verdict and entered judgment for the defendant. Plaintiffs have appealed.

Max A. and Mildred Eaglestein, plaintiffs, were owners of a one-family dwelling house located at 1244 West 64th Street Terrace, Kansas City, Missouri. It is undisputed that Pacific National Insurance Company, defendant, carried the insurance coverage on the property, which was in full force and effect from May 1, 1957 until May 1, 1960.

We set out the two particularly pertinent provisions of the policy, the construction and application of which are required by this lawsuit and will be decisive as to the result:

## "SECTION I—COVERAGE.

"THIS POLICY INSURES AGAINST ALL RISKS OF PHYSICAL LOSS EXCEPT AS HEREINAFTER EXCLUDED, to the described property, subject to the provisions of this form and of the policy to which this form is attached including endorsements thereon.

## "SECTION II—EXCLUSIONS

"THIS POLICY DOES NOT INSURE AGAINST LOSS—

"(A) By termites or other insects; wear and tear, deterioration; smog; smoke from agricultural smudging or industrial operations; rust, wet or dry rot; mould; mechanical break-down; *settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floor, or ceilings;* unless loss by fire, smoke (other than smoke from agricultural smudging or industrial operations), explosion, landslide, *collapse,* water damage, or glass breakage ensues, and this Company shall then be liable only for such ensuing loss." (Italics added).

It is plaintiffs' contention that their evidence shows there was a "collapse" of the walls within the meaning of the policy prior to May 1, 1960, and the court erred in setting aside the verdict and entering judgment for defendant company. It is defendant's position that plaintiffs' evidence shows not a "collapse", but rather a "settling, cracking, shrinkage or expansion" of the foundation and walls which type of casualty is specifically exempted from coverage and therefore the court properly entered judgment for defendant and against plaintiffs.

The defendant offered no evidence at the trial. We review and summarize the evidence as presented by plaintiffs. The insured dwelling was built in 1953–54. It is one-story ranch type with full basement and attached garage. The front is stone and brick veneer and the other sides frame construction. Mr. Eaglestein said that in 1956 he observed a "little settlement" on the southwest and on part of the north side of the house. He employed the Kniepfel Construction Company to underpin the house on three sides and said they "bored for piers about every four or five feet, filled them with concrete reinforced with steel, we leveled the house up completely and sat the house back down on these new footings which was supported by piers". He stated that early in April, 1960, he noticed both vertical and horizontal cracks in the north and west walls. Mr. Kniepfel came again and these walls were shored up with heavy timbers. Mr. Eaglestein testified that the bulges from these cracks kept increasing, the concrete blocks began cracking and dirt came in through the cracks and on the floor. He called the insurance company. An adjuster came but the company did not accept or assume liability. In the fall of 1960, the cracks became wider and were variously described as being one-eighth or one-fourth inch in width. (The policy lapsed May 1, 1960). In March, 1961 plaintiffs employed the Bell Construction Company to repair these walls. Bell's bid

for this job was $3,260, which plaintiffs paid.

Mr. Leon Maslan, who qualified as an architect and engineer, testified. He described the soil in Kansas City as predominantly clay strata. He said that during and immediately after the drought years of 1956–57, "we had a considerable amount of damage to houses and small buildings in Kansas City due to settlement which was actually a result of this clay subsoil shrinking from the lack of water. * * * Then the rains come and it expands and shrinks again as it dries". Mr. Maslan said plaintiffs' dwelling was built on this clay soil. He examined plaintiffs' house in April, 1960, and found horizontal cracks in the "joints of the blocks" in the southwest corner and in the north wall on the west side. He was unable to determine if the walls were broken clear through. He said that once a concrete block wall is cracked it will not heal itself, that if not repaired the situation will become progressively worse "until the upper portion slides off of the bottom portion and then it will collapse". It was Mr. Maslan's opinion that the walls here bulged inward because of hydrostatic pressure which he defined as "pressure which is caused by the presence of water".

Plaintiffs' legal position on appeal, as we understand it, is not that there was an actual de facto collapse, but rather, as stated by their counsel in his opening statement "there was a condition of impending collapse". The policy covered and insured against "collapse" but squarely excluded "settling, cracking, shrinkage or expansion of pavement, foundations, walls, floor or ceilings". Plaintiff insist that these two provisions are inconsistent, each with the other, and are ambiguous. They then ask us to apply the well known rule of construction that when one provision, or two or more provisions of an insurance contract are reasonably susceptible of two meanings, preference will be given to the interpretation most favorable to the insured. They

urge further that where there is an ambiguity, judicial construction will grant, rather than deny, coverage. There is no doubt that such is the law. Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 639, 86 A.L.R.2d 925; Utchen v. American Casualty Co. of Reading, Pennsylvania, Mo.App., 356 S.W.2d 102, 104. However, it is also true, absent ambiguities or phraseology reasonably susceptible of different interpretations or meanings, that courts should enforce the plain provisions of contracts, including contracts of insurance. Winston v. Hartford Fire Ins. Co., Mo.App., 317 S.W.2d 23, 26. As stated in 44 C.J.S. Insurance § 290 p. 1139, "The courts may resort to construction, in the usual sense, of a contract of insurance only when the language of the contract, in its ordinary meaning, is indefinite, ambiguous, or equivocal".

Counsel for both sides state that the appellate courts of Missouri have never ruled on the precise question here presented and we find no such rulings. Our courts have not considered the applicability of a "collapse" provision in an insurance policy under a state of facts similar to those before us. Appellate courts in other jurisdictions have considered the question and have reached almost completely opposite conclusions.

In Jenkins v. United States Fire Ins. Co., 185 Kan. 665, 347 P.2d 417, the policy insured against 14. "Collapse of building(s) or any part thereof". There was an exemption "For loss caused directly or indirectly by earthquake, backing up of sewers or drains, or by flood, * * *". It will be noted these policy provisions are somewhat different from ours where "settling, cracking, shrinkage or expansion" are specifically excluded. However, in the Kansas case the evidence showed a "settling, cracking and breaking" of the walls. The Kansas court said the "basic issue involved was whether appellant could recover for an alleged settling, cracking and breaking of the wall * * * of the basement of a dwelling

insured under \* \* \* a policy \* \* \* insuring her against all direct loss to the property caused by 'collapse of building(s) or any part thereof.'" The court reversed a judgment for defendant and remanded for new trial, saying:

> "Boiled down and stripped of all excess verbiage the gist of appellee's position on this point is that there was no coverage under the collapse clause of the policy until the basement walls fell into a flattened wreck or distorted state.
>
> \*   \*   \*   \*   \*   \*
>
> "\* \* \* we believe the clause 'collapse of building or any part thereof' as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling, falling, cracking, bulging or breaking of the insured building or any part thereof in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a 'collapse' of the building within the meaning of that word as used in such clause of the policy".

The Supreme Court of Nebraska (Morton v. Travelers Indemnity Co. 171 Neb. 433, 106 N.W.2d 710, 713) reached a similar conclusion where the contingency insured against was—"9. Collapse: Loss by collapse shall mean only the collapse of the building or any part thereof", ruling that this clause meant a sudden or unusual shrinking, settling or falling of the building or any part thereof even though the walls or other parts of the building did not actually fall down. We do not find in the Nebraska policy any specific exemption for "settling, cracking, shrinkage or expansion" as found in the Missouri contract. The Supreme Court of Iowa in Rogers v. Maryland Casualty Co., 252 Iowa 1096, 109 N.W. 2d 435, viewed a "collapse clause" as am-

biguous and allowed recovery where the cracks finally became as wide as four inches. Anderson v. Indiana Lumbermens Mutual Ins. Co. of Indianapolis, Indiana (C.A.La.) 127 So.2d 304, holds that "collapse" within meaning of casualty policy on house included cracking and settling of walls due to expansion and contraction of soil. The U.S. Court of Appeals, 10th Circuit, Travelers Fire Ins. Co., Hartford, Conn. v. Whaley, 272 F.2d 288, allowed recovery under a policy issued in the state of Kansas. Wisconsin and Texas courts have also followed this interpretation. Bradish v. British America Assur. Co. of Toronto, Canada, 9 Wis.2d 601, 101 N.W.2d 814; Employers Mut. Cas. Co. v. Nelson (Tex.) 361 S.W.2d 704, 709.

However, in other jurisdictions courts of last resort have reached conclusions exactly opposite. Our Eighth Circuit Court of Appeals in Nugent v. General Ins. Co. of America, 253 F.2d 800, construed a clause against direct loss caused by "collapse of building(s) or any part thereof". The reasoning was that reasonable construction of a Missouri policy on a dwelling insuring against direct loss caused by collapse of building or any part thereof was that policy did not cover loss due to settling or sinking of footings which supported dwelling's exterior walls. In this case plaintiffs did not contend that the insured building as a whole collapsed but asserted that the sinking or settling constituted a collapse of a "part thereof". The "part thereof" phrase is not found in our particular policy.

In Central Mutual Ins. Co. v. Royal et al., 269 Ala. 372, 113 So.2d 680, 683, 72 A.L.R. 2d 1283, the coverage was for "[c]ollapse of building or any part thereof". The Supreme Court of Alabama reversed a judgment for plaintiff and said: "We find from the authorities dealing with the word 'collapse' or 'collapse of a building', as used in various policies of insurance, that the meaning thereof is plain and clear without ambiguity and the contract involved in this case must be enforced as written. In the

case at bar there was no collapse of the building. There was no collapse of any part of the building. Some of the walls appeared to have cracks in them and in two or more places the concrete footing contained cracks, but there was no collapse of the building within the foregoing authorities. There was no falling in, no loss of shape, no reduction to flattened form or rubble of the building or any part thereof. The building was still in its original form and condition with the exception of a few cracks. Accordingly, we do not consider that the appellant was liable under the provisions of the policy to which we have referred or that the plaintiffs were entitled to recover".

In Niagara Fire Ins. Co. v. Curtsinger et al., (C.A.Ky.) 361 S.W.2d 762, that court reversed a judgment for plaintiff, ruled the phrase "[c]ollapse of the building or any part thereof" was not ambiguous, but rather "the word 'collapse' in connection with a building or other structure has a well-understood common meaning" and held that where the porch and its roof pulled a few inches away from the main building there was not a "collapse" within the meaning of the policy. An Illinois appellate court in Kaplan v. Interstate Fire & Casualty Co., 35 Ill.App.2d 400, 182 N.E.2d 766, considered an identical insuring clause and reached a like result.

We quote from the opinion of the Supreme Court of Vermont, Gage v. Union Mut. Fire Ins. Co., 122 Vt. 246, 169 A.2d 29, where the contingency insured against was: "9. Collapse: Loss by collapse shall mean only the collapse of the building(s) or any part thereof." The evidence showed a buckled ceiling, raising of the floor, plumbing becoming out of line and bent, door sill dropping five inches from a level with center of floor and splitting of fireplace. The court reversed a judgment for plaintiff and said:

"We come now to the real question: Did the loss suffered by the plaintiffs constitute a 'collapse of the building(s)

or any part thereof?' An answer to this question can only be found by interpreting the language of the policy and applying it to the facts found. What was the protection which it can fairly be said the policyholder purchased? It is this that he is entitled to receive.

"(3) In arriving at a determination of this sort, uncertainty in the significance of a term used in an insurance policy is to be resolved in favor of the insured and against the company. Griswold v. Metropolitan Life Insurance Co., 107 Vt. 367, 381, 180 A. 649. However, contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense. Johnson v. Hardware Mutual Casualty Co., 108 Vt. 269, 277, 187 A. 788. Certainly not every damage incurred with respect to a building can be said to be a 'collapse' ".

Commenting on the Kansas case, Jenkins v. United States Fire Ins. Co., supra, the Vermont court declared:

"This definition is far too expansive to be predicated on the word 'collapse' as it is commonly understood. We see no reason to reject the plain ordinary meaning of such a word in favor of the definition laid down by the Kansas Court. No doubt coverage of this sort would be a desirable coverage for a policyholder to have, but we do not think it can be fairly said to be the coverage which the policyholder bought. The fact that the Kansas rule was applied in Travelers Fire Insurance Co., Hartford, Conn. v. Whaley, 10 Cir., 1959, 272 F.2d 288, cannot be regarded as further authority for the Kansas rule since the case was one in which the Federal Courts were bound to apply Kansas law".

In an effort to find further enlightenment we examine the dictionary, and a textbook authority. The Oxford English Dictionary defines "collapse" this way: "To fall into a confused mass or into a flattened form by loss of rigidity or support; to break down, give way, fall in, cave in".

14 C.J.S., p. 1316, defines "collapse" as follows: "To break down or fail abruptly and utterly, to cave in; to close by falling or shrinking together, to fall together, or into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, * * *".

The policy on which this suit was brought did not insure against "collapse" and stop. It carried a plain exclusion of "settling, cracking, shrinkage or expansion of pavements, foundations, walls, floor or ceilings" from coverage.

■ We believe that the policy provisions are not ambiguous, certainly not under the factual situation before us. In our opinion the phraseology used has a clear and commonly understood meaning and hence needs no construction over, above and beyond its plain meaning. We regard the opinions of those appellate courts denying coverage under a "collapse clause" in those instances where the walls cracked or settled as being better reasoned and as having reached more logical results. We concur with the conclusion of the trial judge that plaintiffs' casualty, as shown by their evidence, is not covered by the policy.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.