Billy H. WILLIAMS and Gibson B. Jones, partners, d/b/a Jones and Williams Construction Company, Plaintiffs-Respondents,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.

No. KCD 26431.

Missouri Court of Appeals, Kansas City District.

Oct. 7, 1974.

Glenn E. McCann, Knipmeyer, McCann, Fish & Smith, Kansas City, for defendant-appellant.

George T. O'Laughlin, William E. Simmons, Miller & O'Laughlin, P. C., Kansas City, for plaintiffs-respondents.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Billy H. Williams and Gibson B. Jones, partners, d/b/a Jones and Williams Construction Company, hereinafter collectively referred to as "Williams", initiated action in the Circuit Court of Henry County against State Farm Fire and Casualty Company, hereinafter referred to as "State Farm". The nature of the action brought by Williams was to recover damages to a dwelling house constructed for resale purposes, allegedly resulting from a "collapse" within the ambit of an insurance policy issued by State Farm providing coverage for fire and "additional perils". Additionally, Williams sought statutory damages and attorney's fees from State Farm on the ground that it vexatiously refused to pay the amount of damages due and payable under the policy.

A jury was waived, the case was tried by the court and the following judgment, favorable to Williams, was entered: ". . . $3,350.00 loss on property, $800.75 interest; $335.00 as vexatious damages for refusal to pay, and $1495.25 attorney's fees, for a total of $5,981.00 . . .". Following unsuccessful posttrial motions, State Farm timely appealed and positions its claim for appellate relief on five points.

State Farm took, and steadfastly maintains, the position, among others, that the dwelling house did not "collapse" as that term is used and defined in paragraph 14 of Section I ("COVERAGE PERILS INSURED AGAINST") of the policy; instead, only a "cracking or bulging" occurred which is beyond the domain of coverage provided by the policy. This, in essence, is State Farm's first point on appeal. Williams, on the other hand, bottoms the integrity of the judgment on paragraph 14 of Section I of the policy.

The controversial policy provisions reads as follows:

"Section I—COVERAGE PERILS INSURED AGAINST . . .

This policy insures against direct loss to the property covered caused by: . .

14. Collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof. . . ."

An overview of the evidence necessary to dispose of State Farm's first point discloses the following: Around March 1, 1968, Williams began excavation for and construction of a basement, the walls of which were to serve as a foundation upon which to erect a "prefab" dwelling house. The basement walls were allowed to "cure" for approximately two weeks and the exterior excavation around them was then filled and backsloped. Erection of the prefab dwelling house was completed by employees of the manufacturer on May 23, 1968, and on the same date the policy of insurance in question was purchased and placed in effect. On May 26, 1968, Williams discovered the following with respect to the dwelling house: there was a vertical crack, approximately two inches wide, located near the middle of the front (east) basement wall, running all the way through the wall and from the top down into the footing; additionally, there were two smaller cracks in the front (east) basement wall, one each in the areas of the northeast and southeast corners of the basement; viewed inside the basement, there was a noticeable convex bulge that started gradually at each end of the front (east) base-

ment wall which maximized in a bulge of approximately twelve to eighteen inches in depth at about the center of the forty-four foot span of the front (east) basement wall; there were three cracks in the back (west) basement wall, one in the northwest corner, one in the southwest corner, and a hairline crack in the center which ran about halfway down the wall; viewed from inside the basement, there was a less noticeable convex bulge that started gradually at each end of the back (west) basement wall which maximized in a bulge of approximately two or three inches in depth at about the middle of the forty-four foot span of the back (west) basement wall; and minor damage, consisting of some jammed doors and a few hairline cracks in the sheetrock, was visible in the dwelling house proper. Other than as above described the dwelling house proper and all supporting structures remained in place and intact. None of the basement walls, or any part thereof, were ever reduced to "rubble" or fell down. Several days after the described damage was first observed by Williams, both the existing back (west) basement wall and the existing front (east) basement wall, with the "prefab" dwelling house proper still setting thereon, were realigned in place, and the front (east) basement wall was secured by a "deadman" anchor. About a year later minor damage occasioned in the upper part of the dwelling house proper was repaired and the property was sold to a third party.

The body of law existing in this country as to what constitutes "collapse" of an insured structure within the meaning of the term as employed in various policies is sharply divided. One view taken is that "collapse" is an unambiguous term which inherently denotes a commonly understood meaning, fairly paraphrased as a falling or reduction to a flattened form or rubble. Alabama, Vermont, Kentucky, New York, Pennsylvania, *Missouri,* Colorado and Ohio are generally ascribed as holding to this view in light of the following decisions: Central Mutual Insurance Co. v. Royal, 269

Ala. 372, 113 So.2d 680 (1959); Gage v. Union Mutual Fire Insurance Company, 122 Vt. 246, 169 A.2d 29 (1961); Niagara Fire Insurance Company v. Curtsinger, 361 S.W.2d 762 (Ky.1962); Graffeo v. United State Fidelity & Guaranty Company, 20 A.D.2d 643, 246 N.Y.S.2d 258 (1964); Eaglestein v. Pacific National Fire Insurance Company, 377 S.W.2d 540 (Mo.App.1964); Kattelman v. National Union Fire Insurance Company, 415 Pa. 61, 202 A.2d 66 (1964); Higgins v. Connecticut Fire Insurance Company, 163 Colo. 292, 430 P.2d 479 (1967), and Olmstead v. Lumbermens Mutual Ins. Co., 22 Ohio St.2d 212, 259 N.E.2d 123 (1970).

The other view taken is that "collapse" is an ambiguous term to be construed most favorably to the insured and therefore connotes any settling, cracking or bulging "that materially impairs" the "basic structure or substantial integrity" of a building. Wisconsin, Nebraska, Louisiana, Iowa, New Mexico and Maryland are representative of this other view, in light of the following decisions: Bradish v. British America Assur. Co. of Toronto, Can., 9 Wisc.2d 601, 101 N.W.2d 814 (1960); Morton v. Travelers Indemnity Company, 171 Neb. 433, 106 N.W.2d 710 (1960); Anderson v. Indiana Lumbermens Mutual Ins. Co., 127 So.2d 304 (La.App.1961); Rogers v. Maryland Casualty Company, 252 Iowa 1096, 109 N.W.2d 435 (1961); Morton v. Great American Insurance Company, 77 N.M. 35, 419 P.2d 239 (1966), and Government Employees Insurance Co. v. DeJames, 256 Md. 717, 261 A.2d 747 (1970).

The cleavage between the two existing views as to the meaning to be ascribed to "collapse" is as sharp as the variable factual situations involved in the cited cases are different. Moreover, no definite pattern emerges from the variable factual situations indicative of the view ultimately taken as to what constitutes "collapse". This court, consequently, is not convinced that the particular facts present remove this case from the purview of Eaglestein v. Pacific National Fire Insurance Co., supra,

handed down by this court in 1964, as necessarily contended by Williams. Nor is this court convinced that *Eaglestein* is so lacking in sound logic and reason that it should be disavowed as ill conceived and productive of an unconscionable result. In *Eaglestein* this court took careful note of the following principles governing insurance contracts: words which are ambiguous are construed in favor of the insured [Giokaris v. Kincaid, 331 S.W.2d 633 (Mo.1960) and Utchen v. American Casualty Co. of Reading, Pa., 356 S.W.2d 102 (Mo.App.1962)] and words which are not ambiguous are to be given their plain and commonly understood meaning [Dieckman v. Moran, 414 S.W.2d 320 (Mo.1967) and Winston v. Hartford Fire Insurance Company, 317 S.W.2d 23 (Mo.App.1958)]. This court then concluded in *Eaglestein* that "collapse" was not ambiguous and should therefore be given its plain and commonly understood meaning, namely, a falling or reduction to a flattened form or rubble. In doing so, this court considered in depth, but refused to follow, Jenkins v. United States Fire Insurance Company, 185 Kan. 665, 347 P.2d 417 (1959), widely cited for initially pronouncing the view that "collapse" is an ambiguous term connoting any settling, cracking or bulging that "materially impairs" the "basic structure or substantial integrity" of a building. The insurance policy considered in *Jenkins* did not qualify the term "collapse" by definition or exclusion, or by any other means. The insurance policy considered by this court in *Eaglestein* qualified the term "collapse" by squarely excluding "settling, cracking, shrinkage or expansion of pavements, foundations, walls, floor or ceilings". In the instant case "collapse" is unequivocally qualified by restrictive definition, "not settling, cracking, shrinkage, bulging or expansion". The difference, if any, between "collapse" as used in the policy considered in *Eaglestein* and as used in the policy under consideration is cosmetic at best. In 1972 the Supreme Court of Kansas, in Krug v. Millers' Mutual Insurance Ass'n. of Illinois, 209 Kan. 111, 495 P.2d 949, was squarely faced with the identical policy provision now before this court—"Collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof." In *Krug* the Supreme Court of Kansas, citing the rationale voiced by this court in *Eaglestein* for rejecting Jenkins v. United States Fire Insurance Co., 185 Kan. 665, 347 P.2d 417 (1959), distinguished the policy then under consideration from that in *Jenkins* and held that the term "collapse" was not ambiguous since it was specifically defined "as not including settling, cracking, shrinkage, bulging or expansion."

As previously noted, Williams contends "collapse" as used in the policy provision in question is ambiguous and should be given a more expansive definition that coincides with that set forth in Jenkins v. United States Fire Insurance Company, (Kan.), supra, in that line of authorities heretofore cited representative of *Jenkins*. This contention is rejected because this court remains convinced that Eaglestein v. Pacific National Fire Insurance Company, supra, decided by it in 1964, was, and continues to be, bottomed on common sense, good logic and sound judicial reasoning. Williams further contends that addition of "or any part thereof" following "Collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s)", which was not present in the policy considered in *Eaglestein*, renders the clause in question ambiguous and susceptible of being construed as providing coverage for partial "collapse". In effect Williams contends "or any part thereof" is synonymous with "partial collapse." This court finds such contention incongruous. The policy provision in question neither speaks of or in anyway addresses "partial collapse". In fact, it rejects any such concept by the restrictive definition of "collapse" set forth in the policy provision under consideration. The language "or any part thereof" obviously refers to "collapse" of a part of a building, not "partial collapse"

of a part or the whole of a building. The falling or reduction to a flattened form or rubble of an attached garage, supporting foundation wall or roof would appear to be but a few examples of collapse of a part of a building. The Supreme Court of Vermont, in Gage v. Union Mutual Fire Insurance Company, 122 Vt. 246, 169 A.2d 29 (1961), l. c. 31, with reference to "or any part thereof" noted: "Where the claim pertains to a collapse of a part of a building, there must be a collapse of that part. A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract."

This court is not unmindful that to ascribe to "collapse" the meaning urged by Williams would result in desirable coverage for all persons holding similar policies. But this begs the question. The question is, what coverage did Williams purchase according to the terms of the policy? In answering this question Williams would have this court extrapolate the policy provision in question even though no convincing legal precedent or persuasive logic exists for doing so. Moreover, to do so would require rejection of Eaglestein v. Pacific National Fire Insurance Co., supra, previously handed down by this court. For reasons heretofore stated, this court has not been persuaded that *Eaglestein* should be rejected. This court continues to believe that the time honored doctrine of stare decisis still possesses viability.

After reviewing the law and the evidence this court finds that neither the insured property, or any part thereof, collapsed within the meaning of the policy in question and, therefore, the judgment entered by the trial court was "clearly erroneous". Rule 73.01(d) V.A.M.R. Accordingly, disposition of State Farm's remaining four points on appeal is unnecessary.

Judgment reversed and cause remanded to the trial court with directions to enter judgment in favor of State Farm Fire and Casualty Company, defendant, and against Billy H. Williams and Gibson B. Jones, partners, d/b/a Jones and Williams Construction Company, plaintiffs.

All concur.