# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3900

_____

| | | |
|---|---|---|
| Council Tower Association, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Axis Specialty Insurance Company; | * | |
| Jim Vavak, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  September 21, 2010
Filed:  January 6, 2011

_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Council Tower Association ("Council Tower") commenced this action in Missouri state court against Axis Specialty Insurance Company ("Axis"), a Connecticut insurer, and Jim Vavak, an independent claims adjuster and Missouri resident.  Council Tower asserts insurance coverage and related claims for losses incurred when a portion of the brick veneer covering the east wall of Council Tower's apartment building in St. Louis fell to the ground.  Axis removed the case, and

Council Tower moved to remand. See 28 U.S.C. § 1447(c). The district court[1] denied the motion to remand and dismissed Council Tower's claims against Vavak, concluding that those claims were without merit and had been fraudulently joined to destroy diversity jurisdiction. Ruling on cross motions for summary judgment by Axis and Council Tower, the court granted summary judgment for Axis, concluding that Council Tower's loss was not covered under the all-risk policy's additional coverage for losses resulting from "collapse of a building or any part of a building." Council Tower appeals both rulings. We affirm.

## I. The Claims Against Axis.

The east exterior wall of Council Tower's twenty-seven-story building was covered with a decorative brick veneer, twenty-six stories tall, attached to the concrete wall by steel shelf angles and anchor bolts. In October 2005, during the policy's one-year coverage period, every brick below the eighth story of the east wall fell to the ground along with several of the supporting steel shelf angles. Council Tower filed a timely claim under the policy for reimbursement of its loss.

The Axis Commercial Property policy insured Council Tower's building against all "RISKS OF DIRECT PHYSICAL LOSS" except losses specifically excluded or limited. Excluded losses included wear and tear; decay, deterioration, and latent defect; settling, cracking, or expansion; faulty or defective design, construction, or maintenance; and "Collapse, except as provided below in the Additional Coverage for Collapse." As relevant here, the Additional Coverage for Collapse provided:

> 1. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under

---

[1] The Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri.

this Coverage Form, if the collapse is caused by one or more of the following . . . b. Hidden decay . . . .

4. Collapse does not include settling, cracking, shrinkage, bulging or expansion.

After an investigation by independent insurance adjuster Vavak, Axis denied the claim on the ground that the loss was caused by inadequate design or construction and therefore excluded. When an expert reported that a loss of lateral stability had caused the bricks to "collapse somewhat vertically," Council Tower commenced this lawsuit for breach of contract and vexatious refusal to pay its claim.

After substantial discovery, the parties filed cross-motions for summary judgment. Axis argued that the loss was excluded by the wear-and-tear and faulty-design-or-construction exclusions. Council Tower argued that the east-wall failure was a collapse of a part of the building caused by hidden decay of the anchor bolts; therefore, the loss was covered under the Additional Coverage for Collapse. Axis countered that the east-wall failure was not a covered collapse under Missouri law. The district court in a thorough opinion noted that collapse "is the only theory of recovery advanced by Council Tower" and concluded that this coverage theory failed because "there was no collapse under Missouri law." Council Tower Ass'n v. Axis Spec. Ins. Co., No. 4:08-cv-1605, 2009 WL 3806994, at *4 (E.D. Mo. Nov. 12, 2009). The court granted Axis summary judgment and dismissed all claims. On appeal, Council Tower argues the court erred in concluding that the east wall's brick-veneer failure was not a collapse of a part of the building within the meaning of the Additional Coverage for Collapse.[2]

_____

[2] Council Tower argues in the alternative that Axis failed to prove that a specific policy exclusion applies to this loss, even if the east-wall failure was not a collapse. After careful review of Council Tower's summary judgment pleadings, we agree with the district court that Council Tower's claim of coverage in the district court was premised solely on the Additional Coverage for Collapse. "[I]t is axiomatic that

-3-

1.  In this diversity case, we must apply Missouri law as declared by the State's highest court, the Supreme Court of Missouri. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Cincinnati Ins. Co. v. Bluewood, Inc., 560 F.3d 798, 801 (8th Cir. 2009). Under Missouri law, it is well-settled that the interpretation of an insurance policy is a question of law. Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007). If the policy is unambiguous, it will be enforced as written. Bluewood, 560 F.3d at 802.

Among state courts, two competing interpretations of the term "collapse" have emerged. Many state courts limit the word "collapse" to its plain meaning, usually quoting or adopting a dictionary definition such as, "[t]o fall into a confused mass or into a flattened form by loss of rigidity or support; to break down, give way, fall in, cave in." Eaglestein v. Pac. Nat'l Fire Ins. Co., 377 S.W.2d 540, 545 (Mo. App. 1964), quoting The Oxford English Dictionary. The Missouri Court of Appeals has consistently followed this line of authority, holding that "collapse" is an unambiguous term in a property insurance policy, plainly meaning "a falling or reduction to a flattened form or rubble." Williams v. State Farm Fire & Cas. Co., 514 S.W.2d 856, 859 (Mo. App. 1974), quoting Eaglestein, 377 S.W.2d at 545; accord Heintz v. U.S. Fid. & Guar. Co., 730 S.W.2d 268, 269 (Mo. App. 1987). However, other state courts have adopted a broader definition, concluding that the term "collapse" is ambiguous in this context and holding that there need not be rubble on the ground for a loss to trigger coverage. This test examines "whether there was a substantial impairment of the structural integrity" of a building or part of a building. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 973 (Ind. 2005).

The Supreme Court of Missouri has not addressed this issue. Though only that Court's decisions are controlling in a diversity case, we may not disregard decisions

issues not presented to the trial court will not be considered on appeal." Am. Gen. Fin. Corp. v. Parkway Bank & Trust Co., 520 F.2d 607, 608 (8th Cir. 1975).

of the Missouri Court of Appeals unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). Here, both parties treated the Missouri Court of Appeals decisions as controlling in their cross-motions for summary judgment, as did the district court. We will do likewise. Applying this legal standard, we review the district court's denial of coverage and grant of summary judgment *de novo*.

2. The narrow issue before us is whether, under Missouri law, the falling of seven stories of a twenty-six-story exterior brick veneer was a "collapse of a building or any part of a building." Without question, after the fall, there was some rubble on the ground, but the entire building was not "reduc[ed] to a flattened form." Williams, 514 S.W.2d at 859. The question, then, is whether *part* of the building collapsed. It is clear that, under Missouri law, not every debris-producing event is a collapse of part of a building. Eaglestein, 377 S.W.2d at 544, quoting Gage v. Union Mut. Fire Ins. Co., 169 A.2d 29, 30 (Vt. 1961).

As the district court noted, this question was directly addressed by the Missouri Court of Appeals in Williams:

> The language [in the policy] "or any part thereof" obviously refers to "collapse" of a part of a building, not "partial collapse" of a part or the whole of a building. The falling or reduction to a flattened form or rubble of an attached garage, supporting foundation wall or roof would appear to be but a few examples of collapse of a part of a building. . . . "Where the claim pertains to a collapse of a part of a building, there must be a collapse of that part. A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract."

514 S.W.2d at 859-60, quoting in part Gage, 169 A.2d at 31. Relying on this passage, which was cited favorably in Heintz, 730 S.W.2d at 269, the district court concluded

that "the collapse of the lower seven stories of the brick veneer was not a collapse of a part of a building." Though the issue is not free from doubt, we agree.

The issue is particularly doubtful because none of the three Missouri Court of Appeals decisions construing the term "collapse" involved losses from events that produced a significant quantity of rubble. Council Tower argues that the pile of bricks on the ground is enough to prove a covered "collapse." But the above-quoted passage in Williams makes clear, as the district court held, that fallen bricks alone do not establish that "part of the building" collapsed. Here, we agree with the district court that the entire twenty-six-story brick veneer covering the east wall, which served a decorative but not a structural purpose, constituted a part of the building. See Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co., 670 F. Supp. 2d 1156, 1164 (D. Or. 2009) ("part" of a building is an "integral element" that is "essential to completeness").

Whether the fall of seven stories of bricks constituted a collapse of this twenty-six-story decorative part of the building may be debatable, but the district court's conclusion is consistent with the few factually similar cases from other jurisdictions. See Nw. Mut. Ins. Co. v. Bankers Union Life Ins. Co., 485 P.2d 908, 909-10 (Colo. App. 1971) (no collapse of a part occurred when seven veneer panels fell from the building's exterior walls because there was no "structural change and loss of form"); Baker v. Whitley, 361 S.E.2d 766, 767 (N.C. App. 1987) (no collapse of a part of a building when a built-in kitchen cabinet became unhinged from the wall); Middlesex Mut. Assurance Co. v. Puerta De La Esperanza, LLC, --- F. Supp. 2d ---, 2010 WL 2639859, at *3 (D. Mass. June 29, 2010) (collapse of a part is "the falling down or caving in of a structural component"); Gage, 169 A.2d at 30 (shingles blown from a roof are not a collapse of a part of a building). Council Tower does not argue this is a fact issue not suitable for summary judgment. Indeed, as the facts relevant to this question are undisputed, if the district court had found no collapse of a part of the building after a bench trial, we would uphold that finding as not clearly erroneous.

3.    Because the Supreme Court of Missouri has yet to construe the term "collapse," and because a federal court's task in a diversity case is to predict whether that Court would apply the legal standard in <u>Williams</u> to the facts of this case, the district court prudently examined how this case would be decided if the broader standard applied in other States were adopted.  The district court noted that the falling of seven out of twenty-six stories of decorative brick veneer did not impair the structural integrity of the entire part, as cases applying the broader definition of "collapse" have required.  <u>See</u> <u>Kay v. United Pac. Ins. Co.</u>, 902 F. Supp. 656, 659 (D. Md. 1995); <u>Thornewell v. Ind. Lumbermens Mut. Ins. Co.</u>, 147 N.W.2d 317, 320 (Wis. 1967) ("[T]he basic structure or substantial integrity of the part [must be] materially impaired so that it cannot perform its structural function . . . ."); <u>Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson</u>, 361 S.W.2d 704, 709 (Tex. 1962) (defining "partial collapse" of walls as "materially to impair their function").  Therefore, the court concluded, even if the Supreme Court of Missouri adopted the broader definition, "there would be no collapse here."  <u>Council Tower</u>, 2009 WL 3806994, at *6.  We agree.

For these reasons, we affirm the district court's conclusion that the falling of less than one-third of Council Tower's decorative brick veneer was not a collapse of a part of the building within the meaning of the Additional Coverage for Collapse.

## II. The Claims Against Vavak

Council Tower's complaint alleged that independent insurance adjuster Jim Vavak is liable to Council Tower for the torts of injurious falsehood and interference with the insurance contract.  The district court concluded that the joinder of Vavak was fraudulent, denied Council Tower's motion to remand the entire case to state court, and granted Vavak's motion to dismiss the claims against him for failure to state a claim.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  On appeal, Council Tower argues that the district court erred because its claims against Vavak have a "reasonable basis in law

and fact." That is the standard for deciding the issue of fraudulent joinder when ruling on a timely motion to remand. Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006). Council Tower's apparent assumption is that if this contention succeeds, we will remand its claims against Axis to state court.

The assumption is wrong. After denying the motion to remand, the district court dismissed all claims against Vavak. The claims between two diverse parties, Council Tower and Axis, then proceeded to final resolution on the merits. In Caterpillar Inc. v. Lewis, 519 U.S. 61, 64 (1996), the Supreme Court held "that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." The holding in Caterpillar applies to the adjudication of Council Tower's claims against Axis in this case. See Simpson v. Thomure, 484 F.3d 1081, 1084 (8th Cir. 2007). Therefore, as to the claims against Vavak, only the dismissal ruling is now properly before us. If that ruling is reversed, remand to state court will automatically follow because Council Tower and Vavak, the only remaining defendant, are citizens of the same state. Id. We review the district court's dismissal for failure to state a claim *de novo*, applying federal pleading standards and Missouri substantive law. Carton v. Gen. Motors Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010).

**Injurious Falsehood**. Council Tower's complaint alleged that, in his initial preliminary report to Axis, Vavak falsely attributed the east-wall failure to deterioration of mortar between the bricks, which turned out to be wrong. The district court dismissed this claim because "Vavak's preliminary opinion played no role in the denial of coverage, and it cannot be the basis for a claim against him." Council Tower Ass'n v. Axis Spec. Ins. Co., 2008 WL 5423442 at *3 (E.D. Mo. Dec. 29, 2008). We agree. Vavak's preliminary report to his client, Axis, merely stated, "My initial investigation and inspection of the debris would indicate that the deterioration of the mortar is the cause of the loss. We have hired SEA [an engineering firm] for further

cause of loss analysis." See Stein v. Novus Equities Co., 284 S.W.3d 597, 603-04 (Mo. App. 2009).

**Tortious Interference**. Council Tower's complaint alleged that Vavak was guilty of tortious interference with contract because his preliminary report to Axis included the mortar-deterioration theory "without justification." This allegation was a bare recitation of an element of a tortious interference claim under Missouri law. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. banc 2006). The district court dismissed the claim because Council Tower "cannot show lack of justification for any of the statements" in this report because "Vavak's job was to investigate and report to Axis on the cause of loss." Council Tower, 2008 WL 5423442 at *4. Again, we agree. See Stehno, 186 S.W.3d at 252-53; Schott v. Beussink, 950 S.W.2d 621, 628-29 (Mo. App. 1997) .

The judgment of the district court is affirmed.

WOLLMAN, Circuit Judge, concurring and dissenting.

While I agree that the district court correctly dismissed the claims against Jim Vavak, I do not believe that a Missouri court would define "collapse of a . . . part of a building" as narrowly as does the majority. Because I conclude that the destruction of the veneer was more than a "partial collapse" of a part of a building, but rather was a complete collapse of a part, I respectfully dissent.

In the majority's view, "the entire twenty-six-story brick veneer covering the east wall, which served a decorative but not structural purpose, constituted a part of the building." The majority, like the district court, seems to view the collapse of the seven stories as merely a partial collapse of a part of a building. As I see it, even though less than the entire twenty-six-story veneer fell from the Council Tower

building, those sections that did fall constitute—by themselves—a "part" of the building.[3]  Furthermore, those sections "collapsed."  See Eaglestein v. Pacific Nat'l Fire Ins. Co., 377 S.W.2d 540, 545 (Mo. Ct. App. 1964) (concluding that "collapse" should be given its plain, ordinary meaning:  "To fall into a confused mass or into a flattened form by loss of rigidity or support; to break down, give way, fall in, cave in").

Missouri courts have drawn a distinction between a "collapse of a part" of a building and a "partial collapse of a part" of a building.  See Williams v. State Farm Fire & Cas. Co., 514 S.W.2d 856, 860 (Mo. Ct. App. 1974) ("Where the claim pertains to a collapse of a part of a building, there must be a collapse of that part.  A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract.").[4]

In Williams, the Missouri Court of Appeals reaffirmed that "collapse" has an unambiguous meaning in Missouri law:  "a falling or reduction to a flattened form or rubble."  514 S.W.2d at 859.  It therefore rejected an insured's claim for damage to

---

[3]The record indicates that the veneer wall was built in vertical sections, each no more than a few stories tall.  Each brick section sits on a steel shelf, which is attached to the load-bearing concrete wall by anchor bolts.  Each shelf (and its accompanying anchor bolts) can support only a limited number of bricks, so designers (and construction workers) must leave space between the top of one section and the bottom of the next-highest section to prevent the weight of the higher sections from overloading the lower shelves.  Because the twenty-six-story veneer wall is most accurately characterized as multiple sections of veneer wall, I consider each of those sections to be a "part" of the building.

[4]Like the majority, I find our task complicated by the fact that the Supreme Court of Missouri has never said what constitutes a "collapse" under Missouri law. I therefore follow the majority's lead in treating the decisions of the Missouri Court of Appeals as controlling.

foundation walls under a policy covering "Collapse (not settling, cracking, shrinkage, bulging or expansion)." Id. at 857. The damage consisted of "a vertical crack, approximately two inches wide, . . . a noticeable convex bulge," a number of other smaller cracks and hairline cracks, another "less noticeable convex bulge," and "minor damage, consisting of some jammed doors and a few hairline cracks in the sheetrock . . . ." Other than that, "the dwelling house proper and all supporting structures remained in place and intact. None of the basement walls, *or any part thereof*, were ever reduced to 'rubble' or fell down." Id. at 857-58 (emphasis added). On these facts, the court concluded that a collapse had not occurred. It did, however, give three examples of what it might consider to be a collapse of a part of a building: "The falling or reduction to a flattened form or rubble of an attached garage, supporting foundation wall or roof would appear to be but a few examples of collapse of a part of a building." Id. at 860.

Nothing in Williams suggests that an entire wall must collapse for a collapse to have occurred. Rather, Williams merely requires that a part of the building *actually* fall or be reduced to rubble, rather than *partially* fall, *i.e.*, crack or bulge. The deficiency in that plaintiff's case was that no part of the basement walls were reduced to rubble—they had merely cracked and bulged.

Similarly, in Heintz v. U.S. Fidelity and Guaranty Co., the Missouri Court of Appeals rejected an insured's claim under a policy covering "collapse of a building or any part of a building." 730 S.W.2d 268, 268 (Mo. Ct. App. 1987). Although the insured—as part of his petition for relief—asserted the legal conclusion that his walls had collapsed, the court concluded that his deposition testimony regarding the state of the walls was insufficient to show a collapse. Specifically, the court noted, the insured "qualified his *conclusion* that the walls were collapsing, by stating that there was a rotting, deterioration or wasting away of the studding, sheathing and lath and that *while the walls had not collapsed*, they probably would." Id. at 269 (emphasis

-11-

added).  As the district court understood this case, "where the insured testified that 'some of the studding, sheathing and lath in the east and west walls of his home had collapsed,' there was no 'falling down or collapsing of a part of a building' under Missouri law."  D. Ct. Mem. & Order of Nov. 12, 2009, at 12.  But the court in <u>Heintz</u> did not find that some of the studding, sheathing, or lath in the walls had fallen to the ground, *i.e.*, "collapsed"—it found the opposite.  Its conclusion was instead that a "condition of impending collapse is insufficient."  730 S.W.2d at 269.  That is, "[w]ithout actual collapse there is no recovery under the insurance policy . . . ."  <u>Id.</u>

These decisions reveal the difference between the words "part" and "partial" in the Missouri case law of collapse.  "Part" is used to refer to a discrete subset of the entire physical building—a garage, a wall, or a roof.  "Partial," however, is used to refer to a state-of-being—that is, being in the state of partial collapse.

The collapse of the seven stories of veneer in this case was just that—a complete collapse.  To be sure, only a portion, or part, of the veneer collapsed.  But seven stories of veneer is still a "part of a building"—it must be, otherwise twenty-five stories (of twenty-six) would not be.  And the collapse of those seven stories was not partial—not cracking or settling or shrinking—but total, complete.  The bricks and mortar and anchor bolts and shelves from those seven stories were piled in a heap on the ground below.  Accordingly, summary judgment should not have been granted to Axis on the basis that only a partial collapse had occurred.[5]

---

[5]Under my reading of the Missouri case law, recovery would be permitted only for those shelves that actually collapsed.  The higher shelves, which likely have been weakened but have not yet collapsed, are still in a state of "partial collapse," and so would not be covered.

As the district court is in a better position than we to consider the remaining arguments for summary judgment on the issue of coverage, I would remand the case for resolution of those issues.[6]

_____

[6]The majority hypothesizes that "even if the Supreme Court of Missouri adopted the broader," more modern definition of collapse—as a substantial impairment of the structural integrity of the part such that it can no longer perform its function—"there would be no collapse here." I am not so sure. Certainly the lower seven stories of veneer have been impaired to the point that they no longer perform their decorative function. In any event, none of the Missouri Court of Appeals cases indicate a departure from the traditional view of collapse as a reduction to flattened form or rubble.