WOLLMAN, Circuit Judge,
concurring and dissenting.
While I agree that the district court correctly dismissed the claims against Jim Vavak, I do not believe that a Missouri court would define “collapse of a ... part of a building” as narrowly as does the majority. Because I conclude that the destruction of the veneer was more than a “partial collapse” of a part of a building, but rather was a complete collapse of a part, I respectfully dissent.
In the majority’s view, “the entire twenty-six-story brick veneer covering the east wall, which served a decorative but not structural purpose, constituted a part of the building.” The majority, like the district court, seems to view the collapse of the seven stories as merely a partial collapse of a part of a building. As I see it, even though less than the entire twenty-six-story veneer fell from the Council Tower building, those sections that did fall constitute — by themselves — a “part” of the building.[3] Furthermore, those sections “collapsed.” See Eaglestein v. Pacific Nat’l Fire Ins. Co., 377 S.W.2d 540, 545 (Mo.Ct.App.1964) (concluding that “collapse” should be given its plain, ordinary meaning: “To fall into a confused mass or into a flattened form by loss of rigidity or support; to break down, give way, fall in, cave in”).
Missouri courts have drawn a distinction between a “collapse of a part” of a building and a “partial collapse of a part” of a building. See Williams v. State Farm Fire & Cas. Co., 514 S.W.2d 856, 860 (Mo. Ct.App.1974) (“Where the claim pertains to a collapse of a part of a building, there must be a collapse of that part. A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract.”).[4]
In Williams, the Missouri Court of Appeals reaffirmed that “collapse” has an unambiguous meaning in Missouri law: “a *732 falling or reduction to a flattened form or rubble.” 514 S.W.2d at 859. It therefore rejected an insured’s claim for damage to foundation walls under a policy covering “Collapse (not settling, cracking, shrinkage, bulging or expansion).” Id. at 857. The damage consisted of “a vertical crack, approximately two inches wide, ... a noticeable convex bulge,” a number of other smaller cracks and hairline cracks, another “less noticeable convex bulge,” and “minor damage, consisting of some jammed doors and a few hairline cracks in the sheet-rock. ...” Other than that, “the dwelling house proper and all supporting structures remained in place and intact. None of the basement walls, or any part thereof, were ever reduced to ‘rubble’ or fell down.” Id. at 857-58 (emphasis added). On these facts, the court concluded that a collapse had not occurred. It did, however, give three examples of what it might consider to be a collapse of a part of a building: “The falling or reduction to a flattened form or rubble of an attached garage, supporting foundation wall or roof would appear to be but a few examples of collapse of a part of a building.” Id. at 860.
Nothing in Williams suggests that an entire wall must collapse for a collapse to have occurred. Rather, Williams merely requires that a part of the building actually fall or be reduced to rubble, rather than partially fall, i.e., crack or bulge. The deficiency in that plaintiffs case was that no part of the basement walls were reduced to rubble — they had merely cracked and bulged.
Similarly, in Heintz v. U.S. Fidelity and Guaranty Co., the Missouri Court of Appeals rejected an insured’s claim under a policy covering “collapse of a building or any part of a building.” 730 S.W.2d 268, 268 (Mo.Ct.App.1987). Although the insured — as part of his petition for relief— asserted the legal conclusion that his walls had collapsed, the court concluded that his deposition testimony regarding the state of the walls was insufficient to show a collapse. Specifically, the court noted, the insured “qualified his conclusion that the walls were collapsing, by stating that there was a rotting, deterioration or wasting away of the studding, sheathing and lath and that while the walls had not collapsed, they probably would.” Id. at 269 (emphasis added). As the district court understood this case, “where the insured testified that ‘some of the studding, sheathing and lath in the east and west walls of his home had collapsed,’ there was no ‘falling down or collapsing of a part of a building’ under Missouri law.” D. Ct. Mem. & Order of Nov. 12, 2009, at 12. But the court in Heintz did not find that some of the studding, sheathing, or lath in the walls had fallen to the ground, i.e., “collapsed”— it found the opposite. Its conclusion was instead that a “condition of impending collapse is insufficient.” 730 S.W.2d at 269. That is, “[wjithout actual collapse there is no recovery under the insurance policy....” Id.
These decisions reveal the difference between the words “part” and “partial” in the Missouri ease law of collapse. “Part” is used to refer to a discrete subset of the entire physical building — a garage, a wall, or a roof. “Partial,” however, is used to refer to a state-of-being — that is, being in the state of partial collapse.
The collapse of the seven stories of veneer in this case was just that — a complete collapse. To be sure, only a portion, or part, of the veneer collapsed. But seven stories of veneer is still a “part of a building” — it must be, otherwise twenty-five stories (of twenty-six) would not be. And the collapse of those seven stories was not partial — not cracking or settling or shrinking — but total, complete. The bricks and mortar and anchor bolts and shelves from *733 those seven stories were piled in a heap on the ground below. Accordingly, summary judgment should not have been granted to Axis on the basis that only a partial collapse had occurred.[5]
As the district court is in a better position than we to consider the remaining arguments for summary judgment on the issue of coverage, I would remand the case for resolution of those issues.[6]

. The record indicates that the veneer wall was built in vertical sections, each no more than a few stories tall. Each brick section sits on a steel shelf, which is attached to the load-bearing concrete wall by anchor bolts. Each shelf (and its accompanying anchor bolts) can support only a limited number of bricks, so designers (and construction workers) must leave space between the top of one section and the bottom of the next-highest section to prevent the weight of the higher sections from overloading the lower shelves. Because the twenty-six-story veneer wall is most accurately characterized as multiple sections of veneer wall, I consider each of those sections to be a "part” of the building.

. Like the majority, I find our task complicated by the fact that the Supreme Court of Missouri has never said what constitutes a "collapse” under Missouri law. I therefore follow the majority’s lead in treating the decisions of the Missouri Court of Appeals as controlling.

. Under my reading of the Missouri case law, recovery would be permitted only for those shelves that actually collapsed. The higher shelves, which likely have been weakened but have not yet collapsed, are still in a state of "partial collapse,” and so would not be covered.

. The majority hypothesizes that "even if the Supreme Court of Missouri adopted the broader,” more modern definition of collapse — as a substantial impairment of the structural integrity of the part such that it can no longer perform its function — "there would be no collapse here.” I am not so sure. Certainly the lower seven stories of veneer have been impaired to the point that they no longer perform their decorative function. In any event, none of the Missouri Court of Appeals cases indicate a departure from the traditional view of collapse as a reduction to flattened form or rubble.