No. 32,576

JAMES GRADY and ANNA GRADY, *Appellants*, v. J. F. ERHARD, *Appellee*.

(53 P. 2d 478)

Opinion filed January 25, 1936.

*George McGill, H. C. Castor, Victor J. Rogers, John Madden, John Madden, Jr.*, all of Wichita, and *John L. Gleason*, of Oklahoma City, Okla., for the appellants.

*W. D. Jochems, J. Wirth Sargent, Robert C. Foulston, George Siefkin, Lester L. Morris* and *George B. Powers,* all of Wichita, for the appellee.

The opinion of the court was delivered by

. HARVEY, J.: This was an action by lessors against their lessee for damages for the alleged wrongful termination of the lease. The jury answered special questions, and returned a verdict for defendant. Plaintiffs have appealed.

The necessary pertinent facts may be stated as follows: Plaintiffs were the owners of a three-story business building in Wichita. It was an old building, in need of repairs. Defendant desired to lease it. On December 10, 1928, the parties entered into a written agreement by which defendant agreed to rent the premises for a term of ten years beginning January 1, 1929, at a stipulated rental, and in addition to paying the rent to put in a new stairway, remodel the floor and put in new floors where needed, place a new roof on the building, repair and cement the courts, paint and plaster all walls where needed, and to make other ordinary, necessary and proper repairs. He agreed to expend during the first five years of the lease not less than $3,000 for repairs and improvements on the building. It was further agreed that a customary commercial lease be drawn and executed.

On January 25, 1929, the parties executed the lease. Apparently an old form was used, but the terms of the lease are not in controversy except as to one paragraph which was written into the printed form and which reads as follows:

"It is further agreed that in case the building on said premises shall be destroyed by fire, or be so injured by an act of God or by collapse of walls as to be unfit for occupancy, then the liability of said lessee for the rent of said premises thereafter and all rights to possession thereof shall at once cease. It is agreed, however, that in the event said building is rendered only partially unfit for occupancy by reason of fire or other damage by the elements, or collapse of walls, then lessee shall have the right to continue in possession of such part as is fit for occupancy and the rent shall be paid pro rata in proportion to the part of the building which is tenantable, but no rent shall be paid on that portion which is so rendered untenantable until such time as it is repaired and restored to a tenantable condition, at which time the payment of the full amount of the rentals herein agreed shall be resumed. If the said building is totally destroyed but is restored by lessors, then rentals will be resumed from the date said building is restored ready for occupancy."

Defendant went into possession of the property, made the repairs which he had agreed to make, subleased portions of the building to

other tenants as he was authorized to do, and paid the rent stipulated in the lease until about the beginning of 1933. By that time the rear wall of the building was settling so that it was pulling loose. There was some discussion about its condition. On February 9, 1933, defendant wrote plaintiffs:

"The back wall of the building . . . is in a dangerous condition and is liable to collapse, and unless the wall is immediately rebuilt and the injuries to the building caused by the settling of the wall are repaired, I will be compelled to terminate the lease. . . ."

Plaintiffs consulted their attorney, who, acting for them, wrote defendant, acknowledging the receipt of his letter and saying: "Please be advised that steps are being taken at once to make the necessary repairs," and advising defendant that since he was asking for a strict compliance with the lease the plaintiff would insist on strict compliance, particularly with reference to the payment of rent. Plaintiffs procured the keys to the building and had it inspected by the city building inspector, who testified in his opinion the wall was in a dangerous condition and could not be repaired; by a structural engineer, who testified that while the wall was not in good shape he thought there was no immediate danger of its falling, and that it could be repaired; and by a contractor, who did not consider it dangerous and thought the building was fit for occupancy, and although the rear wall was not in good shape that it could be repaired. Plaintiffs made no repairs, but sued defendant for rent in the city court, and a month or two later brought a second suit for rent. These actions reached the district court, where they were consolidated and tried to a jury, which found the building became unfit for occupancy in May, 1933, because of the condition of the rear wall. Defendant and his subtenants had ceased to occupy the building by that date. Thereafter plaintiffs rented the property to other tenants at a monthly rental less than defendant had agreed to pay.

This action was brought for the difference between the amount defendant had agreed to pay and the amount plaintiffs were able to get another tenant to pay for the remainder of the term of the lease. In their petition, briefly stated, plaintiffs alleged defendant terminated the lease wrongfully and without just cause. In his answer defendant denied that charge and alleged that the rear wall of the building had collapsed to an extent to render the building unfit for occupancy. He also pleaded the judgment in the rent case as *res judicata*. Answering special questions, the jury found the rear wall

of the building was not in a safe condition in May, 1933; that plaintiffs had not voluntarily assumed the obligation of keeping the rear wall in proper condition; that the leased premises were unfit for occupancy in May, 1933; that they did not become unfit for occupancy because of defendant's failure to make "usual and ordinary repairs," but because of a "collapse of the wall," and because of the failure of plaintiffs to repair the wall. The jury further found that plaintiffs used ordinary diligence in securing a renter for the unexpired term. Plaintiffs' motion to set aside the answers to certain special questions was overruled, as was also their motion for judgment on the answers to special questions notwithstanding the general verdict, and their motion for a new trial.

The controversy between the parties turns largely upon the meaning of the word "collapse" as used in the paragraph of the lease hereinbefore quoted. Plaintiffs cite, among other authorities, Webster's New International Dictionary defining collapse:

"To fall or shrink together abruptly, as the sides of a hollow vessel; to cave in; to fall into a flattened, wrecked, distorted, or disorganized state; . . . to break down or fail abruptly and utterly; to go to pieces. . . ."

They argued that "before the wall can be said to have collapsed it must be shown to have fallen down." There is no evidence the wall had fallen, hence, it is argued, the court should hold, as a matter of law, that defendant was not justified in terminating the lease on the ground the wall had collapsed.

Defendant argues that the context makes it clear the word was not used by the parties in that sense, but that the terms used mean a sinking, cracking, or falling of the wall so as to make the building unfit for occupancy. We agree with this view. The language is: ". . . In case the building . . . be so injured . . . by collapse of walls as to be unfit for occupancy . . ." defendant's liability to pay rent shall cease. Further, if the building "is rendered only partially unfit for occupancy by reason of . . . collapse of walls" the lessee is privileged to occupy "such part as is fit for occupancy" and pay rent pro rata; but no rent to be paid on the untenantable portion "until such time as it is repaired and restored to a tenantable condition." Obviously the parties had "tenantable condition" or "fitness for occupancy" uppermost in their minds when they wrote into the lease the paragraph above quoted. It deals with but little else. The trial court incorporated this view

of the lease in its instructions to the jury. Plaintiffs complain of these instructions. We think they were correct.

On the question whether the rear wall of the building had given way or fallen to the extent the building was "unfit for occupancy," while there was some conflict in the testimony, there was an abundance of evidence to sustain the verdict of the jury, which verdict, approved by the trial court, is binding here. We deem it unnecessary to summarize this evidence.

Plaintiffs point out the language of the agreement of December 10, 1928, by which defendant agreed "to make all ordinary, necessary and proper repairs." On this language they predicate an argument that it was the duty of the defendant to make the necessary repairs, even to the walls. The point is not well taken. Deterioration of the wall of a building so as to render it unfit for occupancy occurs so seldom that it could hardly be regarded as "ordinary." But apart from that, the parties here wrote into the lease a paragraph dealing with that specific subject. This indicates the parties did not regard the language quoted from the agreement of December 10 as pertaining to the walls. In this connection plaintiffs stress an answer of the jury to a special question that plaintiffs had not voluntarily assumed the obligation of keeping the rear wall in proper condition. This finding obviously relates to evidence offered at the trial with respect to conversations between the parties late in 1932 and early in 1933 and the correspondence between them hereinbefore mentioned, and amounts to a finding that plaintiffs in those matters had not voluntarily assumed such obligation. The quoted parts of the lease itself, however, place that burden upon plaintiffs. By it defendant was not to pay rent if the wall collapsed so as to render the building unfit for occupancy, or if partially unfit, the rent was to be pro rated until the walls were repaired. Clearly the duty to make such repairs was assumed by plaintiffs under the terms of their lease.

Able counsel have argued many of the rules of law pertaining to landlords and tenants, especially those relating to duty to repair and authority of tenant to terminate the lease because of the condition of the premises, and in this connection have cited numerous authorities. The cases cited, of course, deal with the facts disclosed by the respective cases. It would serve no useful purpose to analyze these authorities and distinguish them. The question involved in this case is: What did the parties agree upon with respect to the

event or circumstances under which defendant might terminate the lease and cease to pay rent? Clearly, they meant such a falling of the wall as would render the building unfit for occupancy. Whether that condition came about was a question of fact for the jury and the trial court.

We need not go into the question of *res judicata*, although it appears that the same result would be reached so far as this appeal is concerned, for in the rent case the same issues were presented as in this case, and substantially the same findings were made.

We find no error in the record. The judgment of the court below is affirmed.