**TRAVELERS FIRE INSURANCE COM-
PANY, HARTFORD, CONNECT-
ICUT, Appellant,**

v.

**Harry A. WHALEY and Velva Irene
Whaley, Appellees.**

**No. 6121.**

United States Court of Appeals
Tenth Circuit.

Nov. 12, 1959.

Hugo T. Wedell, Wichita, Kan. (Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Robert T. Cornwell, Wichita, Kan., were with him on the brief), for appellant.

Charles D. Anderson, Wichita, Kan. (Donald B. Clark, Wichita, Kan., was with him on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action on a fire insurance policy issued by appellant, Travelers Fire Insurance Company of Hartford, Connecticut, in which it insured the building at 1138 North Erie, Wichita, Kansas, which was owned under the policy, at the time of the events narrated herein, by Harry A. and Velva Irene Whaley. The policy insured against loss resulting from "Collapse of building (s) or any part thereof." The decision turns upon whether there was a collapse of the foundation walls of the building within the meaning of that term as used in the policy. The court found there was and entered judgment for plaintiffs-appellees herein.

There is no claim that the building, or any part thereof, collapsed in the sense that it tumbled down or fell in a heap. The court found that on or about April 12, 1957, the basement walls cracked and broke on the west, north and south walls of the residence; that this cracking of the basement walls withdrew the support necessary for the first floor and caused damage to the ceiling, rafters, and to the upper walls of the first floor resulting in material damage to the structure. The court further found that a portion of the residence had fallen so that the substantial integrity of the building had been impaired to such an extent as to render it unsuitable for use as a home; that in addition, this fall of a part of the building exposed it to the inclemency of the weather and rendered its contents more easily subject to the elements. It is contended that the record does not support a finding that there was a collapse of a part of the building within the meaning that must be ascribed to that term as used in the policy.

There was testimony that in April, 1957, the appellees noticed a crack in one wall of the basement, described as one to one and one-half inches wide and eighteen to twenty feet long, through which rain water had come to a depth of approximately one foot, flooding out the water heater; that subsequently appellees noticed cracks in two of the other basement walls and wrinkling of wall paper and cracking of plaster in the upper part of the house. In August, 1957, a building contractor examined the house and found cracks from one-half to three-fourths of an inch wide and that the basement wall was bulged in about two to two and one-half inches in one place. Subsequently, appellees propped up the house with supports from the basement. Photograhic exhibits were also introduced which showed that the foundation wall had sunk and pulled away from the plates supporting the superstructure. These exhibits also showed horizontal and perpendicular cracks and separation in various parts of the foundation walls.

Appellant relies for its position upon the standard and ordinarily understood definition of the word "collapse." Its position is pinpointed in the first question it poses wherein it asks, "Is there any evidence that any part of the insured property has fallen?" It answered the question in the negative by quoting the definition of the word "collapse"

from Webster's International Dictionary and New Century Dictionary, both substantially defining the word "collapse" as meaning to break down, to fall in irregular mass, or a flattened form through loss of rigidity of support. It also places reliance for its position upon Skelly v. Fidelity & Casualty Company, 313 Pa. 202, 169 A. 78. In that case, a runaway freight car crashed into the side of a building, knocking a hole therein. The insured was injured by some flying debris. The court held there was no collapse of the wall. The court said, "It could no more be said that there was a collapse of the wall under the circumstances appearing than it could be determined that, if a battering ram or a projectile knocked a hole in the wall, it collapsed." We think there is a distinction between a battering ram knocking a hole in the wall and the facts of this case.

■ This is a Kansas case, controlled by Kansas law. We think the case of Grady v. Erhard, 143 Kan. 170, 53 P.2d 478, 479, is in point on the facts. In the Grady case, a lease contained a provision that the lessee was not required to pay rent if the premises should be destroyed "by * * * collapse of walls as to be unfit for occupancy." As here, there was no collapse in the sense of a tumbling down. The rear wall settled so as to pull away from the building. The court held that this constituted a collapse of the wall.

The court in that case construed the word "collapse" as it concluded the parties intended it should be used in the contract. So here, we must construe the word in the context it was used by the parties in executing this insurance contract. Did the parties intend there should be no coverage, and, therefore, no recoverable loss, unless there was a complete collapse and tumbling down of the foundation wall, so as to cause the superstructure to come crashing down in a heap of rubble; or did they mean the more realistic situation that if the foundation disintegrated by settling, pulling away or cracking so that it would no longer support the house, that there was a partial collapse?

In the Grady case, the word "collapse" was used without qualification. The argument was made, as here, that the lease meant that if there was a collapse—that is if the house or walls came crashing down in a heap so as to make it untenantable—only then would the lessee be relieved from liability. There, as here, it was merely a pulling away of the wall which made the house untenantable The court rejected the narrow abstract construction of the word "collapse" and defined it in the sense it concluded the parties intended when they wrote the contract.

■ In Great Eastern Casualty Company v. Blackwelder, 21 Ga.App. 586, 94 S.E. 843, the court held there was liability, under an accident insurance policy insuring against loss from an accident resulting from the collapse of a building, if the injury resulted from a partial collapse of the building. As pointed out by the court in that case, the general law is that where a contract of insurance, prepared by the company, contains a word susceptible of being construed, without violence, as having more than one meaning, the meaning most favorable to the interests of the insured and most unfavorable to the insurer must be adopted.[1] We think the word "collapse" is such a word. We may take judicial knowledge, as the court did in Great Eastern Casualty Company v. Blackwelder, supra, that it is the universal custom of the insurance companies to prepare their contracts of insurance. If the appellant intended that the word "collapse" should be ascribed the abstract dictionary definition it now contends for, it should have so stated. In the absence of such an expressed intent, we think it more real-

1. See also: North American Accident Insurance Co. v. Tebbs, 10 Cir., 107 F.2d 853; Passmore Metal & Roofing Company v. New Amsterdam Co., 10 Cir., 147 F.2d 536; Aetna Insurance v. Rhodes, 10 Cir., 170 F.2d 111.

istic to define the terms in such a contract as connoting a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation.

Affirmed.