No. 46,285

Marvin E. Krug, *Appellant*, v. Millers' Mutual Insurance Association of Illinois, *Appellee*.

(495 P. 2d 949)

Opinion filed April 8, 1972.

*Ivan D. Krug*, of La Crosse, argued the cause and was on the brief for the appellant.

*H. Lee Turner*, of Turner and Balloun, Chartered, of Great Bend, argued the cause, and *J. Eugene Balloun* and *Thomas C. Kelley*, of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action on a homeowner's insurance policy to recover damages to the plaintiff's home resulting from a "collapse" within the terms of the policy written by Millers' Mutual Insurance Association of Illinois (defendant-appellee). The trial court sustained a motion for summary judgment and appeal has been duly perfected.

The only issue is whether the contract of insurance issued by the defendant to the plaintiff covers the kind of damage the plaintiff claims he suffered.

The matter was determined by the trial court on the pleadings

and the deposition testimony of the plaintiff. There is no dispute in the facts.

The plaintiff's residence home covered by the defendant's policy of insurance is connected to the city water system of La Crosse, Kansas. The city water main runs under a street adjacent to the plaintiff's property, and his house is connected to the water main by pipes passing underground to the house. The water line goes through the foundation wall and is connected to the water system in the home. The ownership of the pipe from the city main to the house is in the plaintiff and the pipe is maintained by the plaintiff at his own expense.

In December, 1964, a water leak occurred in the plumbing system near the northwest corner of the plaintiff's home in the pipe leading from the city main to the home. The leak occurred at a point ten to fifteen feet from the side of the house. The water ran along the pipe to the foundation and concentrated beneath the ground at that point. Some of the water ran into the basement of the home. The plaintiff had the leak in his water line repaired within a reasonable time after it was discovered. Three or four months after the discovery of this leak the plaintiff noticed the east wall of his kitchen had separated from the ceiling. The soil around the house, saturated with the water from the leak, sagged from the weight of the house, creating the crack in the kitchen wall. The plaintiff made this discovery in his home shortly after he heard a noise that sounded like a shot.

The policy of insurance here in question was issued by the defendant and was in force at the time the water leakage took place and at the time the break was found in the kitchen wall of the plaintiff's home.

The plaintiff does not claim any direct loss from water leakage; but his claim consists entirely of a loss caused by the settling of his house that he claims was directly brought about by the water leakage in December, 1964.

The policy of insurance issued by the defendant insured the plaintiff against direct loss to the property covered on nineteen different perils which are listed in the policy.

Peril No. 14 reads in part:

"14. Collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof, . . ."

Peril No. 15 reads in part:

"15. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating, or air conditioning system or domestic appliance, . . ."

The policy contains certain exclusions to perils Nos. 14 and 15, which read as follows:

"C. *Special Exclusions*
"This Company shall not be liable:
"(a) as respects Perils . . . 14, 15, . . . for loss caused directly or indirectly by earthquake, volcanic eruption, landslide or other movement:
"(b) *as respects Perils . . . 14, 15, . . . for loss caused by, resulting from, contributed to or aggravated by any of the following:*
"(1) flood, surface water, waves, tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;
"(2) water which backs up through sewers or drains;
"(3) *water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors,* or through doors, windows or any other openings in such sidewalks, driveways, *foundations,* walls or floors;
unless loss by fire or explosions ensues, and this Company shall then be liable only for such ensuing loss; but these exclusions do not apply to loss by theft;" (Emphasis added.)

The trial court found there was no coverage in favor of the plaintiff under the policy for cracking and settling of his house that might be caused from water that escaped from the broken water line. It found peril No. 14 set forth in the insurance policy specifically excludes "settling, cracking, shrinkage, bulging or expansion" of buildings. It thereupon concluded the defendant's motion for summary judgment should be sustained and it entered an order accordingly.

The term "collapse" in a fire insurance policy was treated by this court in *Jenkins v. United States Fire Ins. Co.,* 185 Kan. 665, 347 P. 2d 417. There the appellant was insured under a policy against all direct loss to the property caused by "collapse of building(s) or any part thereof." (p. 667.) The insurance company urged that the word "collapse" was unambiguous and should be construed according to its dictionary interpretation; that there was no coverage under the "collapse" clause of the policy until the basement walls fell into a flattened, wrecked or distorted state. The court, however, disagreed with the insurance company's

position and thought the term "collapse" was ambiguous. In the opinion the court said:

". . . we believe the clause 'collapse of building or any part thereof' as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling, falling, cracking, bulging or breaking of the insured building or any part thereof in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a 'collapse' of the building within the meaning of that word as used in such clause of the policy." (pp. 671, 672.)

The language of the policy considered in the *Jenkins* case did not qualify the term "collapse" in any way. To counter the ambiguity which courts found in the use of the word by itself, insurance companies thereafter drafted new policies that covered "collapse" but did not cover "settling, cracking, shrinkage, bulging or expansion" until collapse ensued.

In *Allen v. Hartford Fire Ins. Co.*, 187 Kan. 728, 359 P. 2d 829, this court followed the decision in *Jenkins* and affirmed a jury's verdict against the insurance company in a case involving policy language similar to that in the *Jenkins* case. But our court has not yet considered the new policy language here presented. (See *Stewart v. Preferred Fire Ins. Co.*, 206 Kan. 247, 250, 477 P. 2d 966.)

The appellant contends the term "collapse" used in the policy here in question is ambiguous. It is argued the primary requirement for collapse is abruptness, which is clearly present in the case at bar, because it happened suddenly without any prior warning or knowledge on the plaintiff's part. The appellant urges that the "settling" and "cracking" excluded in peril No. 14 should be thought of in the normal everyday sense in which these words are used—that houses normally settle with age and this causes small hairlike cracks in walls and ceilings. It is argued the public would so construe these two words of exclusion (citing *Casey v. Aetna Casualty & Surety Co.*, 205 Kan. 495, 470 P. 2d 821).

The plaintiff urges the proper construction of the two words of exclusion, "settling" and "cracking," refers only to normal settling and cracking. In this connection he quotes 13 Couch on Insurance 2d § 48:175 as follows:

". . . Included within the concept of normal settling, shrinking, or expansion are not only those forces which are constantly and habitually operating, but also those ordinary forces which operate periodically or within a certain degree of frequency." (pp. 612, 613.)

The foregoing quotation is prefaced in Couch with the statement that a comprehensive dwelling policy will generally exclude liability for "normal settling, shrinking, or expansion of foundations, walls, floors, and ceilings."

Upon the foregoing the appellant contends the water leakage here was clearly not an ordinary force and it does not occur periodically; that the loss here was caused by a more severe and abrupt event that sounded like a shot. It is urged that whether the loss was caused by normal settling and cracking, or by water, is a jury question and not one to be decided on summary judgment.

The authorities are not all in agreement as to whether the new policy language involved in this appeal is unambiguous. In *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 261 A. 2d 747 (Md. App. 1970), the court held language identical to that in the policy here in question to be ambiguous, paying special attention to our *Jenkins* decision as well as the Tenth Circuit Court of Appeals' decision in *Travelers Fire Insurance Company v. Whaley,* 272 F. 2d 288 (10th Cir. 1959).

In *Graffeo v. United States Fidelity & Guaranty Co.,* 20 A. D. 2d 643, 246 N. Y. S. 2d 258, motion for leave to appeal dismissed, 14 N. Y. 2d 685, 249 N. Y. S. 2d 882, 198 N. E. 2d 911 (1964), the New York Court of Appeals considered a comprehensive insurance policy insuring all risk of physical loss except settling, cracking, etc., unless loss by collapse ensues. There the concrete slab under a split-level house had settled so that the interior walls pulled away from the ceilings. The Appellate Division held that such damage was not a "collapse" within the clause of the policy.

The Kansas City Court of Appeals considered the same policy language in *Eaglestein v. Pacific National Fire Insurance Co.,* 377 S. W. 2d 540 (Mo. App. 1964). There vertical and horizontal cracks developed in the north and west walls of a one-story ranch home. The policy insured against "collapse" but excluded coverage for " 'settling, cracking, shrinkage or expansion of pavements, foundations, walls, floor or ceilings.' " (p. 545.) The court rejected the more liberal interpretation of the *Jenkins* case urged upon it saying that:

"The policy on which this suit was brought did not insure against 'collapse' and stop. It carried a plain exclusion of 'settling, cracking, shrinkage or expansion of pavements, foundations, walls, floor or ceilings' from coverage." (p. 545.)

The California Supreme Court considered similar policy language in *Sabella v. Wisler*, 59 C. 2d 21, 27 Cal. Rptr. 689, 377 P. 2d 889 (1963). There the National Union Fire Insurance Company had issued a policy to the Sabellas containing an " ' "All Physical Loss" Building Endorsement.' " (p. 26) National Union agreed to insure the house " 'against all risks of physical loss except as hereinafter excluded.' " (p. 26.) Under the heading " 'Exclusions,' " it was stated:

". . . 'This endorsement does not insure against *loss . . . by . . . settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings; unless loss by . . . collapse of buildings ensues. . . .*' (Emphasis added.)" (p. 26.)

There a sewer pipe leaked at a point near the plaintiff's house, causing the sewer overflow to infiltrate the unstable earth near and below the foundation. After three months of such drainage the house settled to such an extent that its foundations and walls cracked, its floors became no longer level and certain of its doors and windows could no longer be opened or closed. The trial court found the insurance company exempt from liability under the policy because the loss was caused by "settling" within the meaning of the exception to the insurance coverage. On appeal the trial court's decision as to this point was affirmed, and in the course of its opinion, the court discussed the meaning of the term "settled" as follows:

"But it appears that an ordinary individual surveying the instant damage could properly conclude that the house 'settled,' so that placement of the word 'settling' in the exclusion clause would convey to the ordinary person reading the policy exceptions . . . . , the meaning that the type of subsidence loss herein was meant to be excluded from coverage. It should be noted that the understanding as to non-coverage here relevant is that of the ordinary purchaser of insurance, desirous of knowing what he is getting for his money. . . . While somewhat more clarity of statement might be desirable from the standpoint of the average lay purchaser of insurance, it would appear that the present exception was sufficiently understandable by an ordinary reader." (pp. 30, 31.)

For other decisions of like import see *Samuel v. Sewerage & Water Board of New Orleans*, 181 So. 2d 243 (La. App. 1965); and *Anderson v. Indiana Lumbermens Mutual Ins. Co.*, 127 So. 2d 304 (La. App. 1961).

After giving consideration to the foregoing authorities, we do not think the language used in peril No. 14 of the insurance policy here in question is ambiguous. "Collapse" is specifically defined as

not including settling, cracking, shrinkage, bulging or expansion. On the facts in this case, the appellant's home settled. It did not collapse within the meaning of the language in peril No. 14.

Was the loss to the appellant within peril No. 15 of the insurance policy?

The risk insured against in peril No. 15 of the insurance policy would grant recovery as to damage occurring to the appellant's house by reason of accidental discharge, leakage or the overflow of water from within a plumbing system. The policy here in question insures the entire premises on which the house is located. The plaintiff's plumbing system started at the city water main and the leak occurred within the plumbing system on the premises. (See *Casey v. Aetna Casualty & Surety Co.*, 205 Kan. 495, 470 P. 2d 821; *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571; *Schmitt v. Paramount Fire Insurance Company*, 92 N. W. 2d 177 [N. D. 1958]; and *World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co.*, 169 F. 2d 826 [8th Cir. 1948].)

Under special exclusion (*b*) (3) a loss occurring by reason of the accidental discharge of water from within a plumbing system is excluded, if the loss was caused by, resulted from or contributed to by water below the surface of the ground.

It is a general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. (*Roach v. Churchman*, 431 F. 2d 849 [8th Cir. 1970]; and *Stanley v. Onetta Boat Works, Inc.*, 431 F. 2d 241 [9th Cir. 1970].) The strict construction of exclusionary clauses in insurance policies has been followed in *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119, where the court said:

". . . if an insurer intends to restrict the coverage of a policy it should use language clearly stating its purpose." (p. 737.)

Other Kansas decisions affirming the rule are *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711; and *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 449 P. 2d 477.

Where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified excep-

tion. (*Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 396 P. 2d 264.)

It is the appellant's position with respect to exclusion (*b*) (3) that water below the surface of the ground, under proper rules of construction, means that water which is defined as groundwater. The appellant argues:

". . . This is the water that we all normally accept as the water seeping into basements. This construction is fortified by the remaining words in the sentence 'which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements, or other floors . . .' All of which describe water problems where a high underground water table exists. Again, following the proper rules of interpretation, we have to view this clause under a normal person's understanding of the terms."

We fail to see merit in the appellant's argument relative to the construction of exclusion (*b*) (3). The exclusion does not speak of "ground water" as the appellant defines it. The exclusion states "water below the surface of the ground *including* that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, etc." (Emphasis added.) When the exclusion is read as a part of the contract its plain meaning is to limit the coverage which might otherwise fall within the policy language under peril No. 15. Where the language is unambiguous, as here, the appellee under the rules stated must prevail.

Here the water which leaked from the broken water line was water below the surface of the ground within the meaning of the exclusion. In other words, under our interpretation of the policy here at issue, the damage caused to the appellant's house from water below the surface of the ground, which caused the home to settle, was a loss excluded from the basic coverage under peril No. 15, insuring against accidental leakage of water from within a plumbing system. (*Park v. Hanover Insurance Company*, 443 S. W. 2d 940 [Tex. Civ. App. 1969].)

In conclusion we find that the trial court did not err in entering summary judgment for the appellee in this case.

The judgment of the lower court is affirmed.