# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1397
_____

Michael Bull

*Plaintiff - Appellant*

v.

Nationwide Mutual Fire Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 14, 2016
Filed: May 27, 2016
[Published]
_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.
_____

PER CURIAM.

Michael Bull sued his insurer, Nationwide Mutual Fire Insurance Company ("Nationwide") in Arkansas state court alleging breach of contract based on Nationwide's refusal to pay for damages caused by water that leaked from a buried pipe located beneath the garage-floor slab of Bull's home. Nationwide removed the case to federal court asserting diversity jurisdiction and moved for summary

judgment. The district court[1] granted summary judgment concluding an exclusion in Bull's homeowner's policy applied and defeated coverage. Upon de novo review, we conclude the exclusion is unambiguous and applies. As such, we affirm the judgment of the district court.

## I. Background

Bull obtained a homeowner's policy with Nationwide. His policy contained an exclusion for loss caused by "water . . . below the surface of the ground." The exclusion and its surrounding language provided, in full, as follows:

> We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.
> . . .
> b)    Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material means:
>     (1)    flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.
>     (2)    water or water-borne material which:
>         (a)    backs up through sewers or drains from outside the dwelling's plumbing system; or
>         (b)    overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.
>     *(3)    water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building,*

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

> *sidewalk, driveway, foundation, swimming pool, or other*
> *structure.*

(Emphasis added).

Bull alleges the leak from the buried pipe beneath his garage slab caused settling and mold, including the settling and cracking of his foundation, a brick walkway, and interior walls.

Bull submitted a claim to Nationwide, and Nationwide denied coverage, invoking the exclusion quoted above. Bull sued, arguing the exclusion was ambiguous because, according to Bull, the exclusion at issue should apply only to water from a natural source and not to water from a pipe. The district court concluded the exclusion's language broadly applied to water below the surface of the ground, regardless of whether that water came from a pipe.

Bull appeals, arguing the exclusion is ambiguous. In particular, he argues several other courts have found identical language to be ambiguous thus conclusively demonstrating the presence of an ambiguity. He also argues Arkansas cases cited by the district court did not involve identical language. Rather, the Arkansas cases cited by the district court interpreted policies containing similar exclusions that also included clarifying language to indicate the exclusions applied to water below the surface of the ground *"regardless of its source."* Bull argues the absence of this clarifying language in his policy demonstrates the presence of an ambiguity. Finally, he argues Arkansas law requires resolution of the ambiguity in favor of coverage.

## II. Discussion

We review a grant of summary judgment de novo. <u>Weitz Co. v. Lloyd's of London</u>, 574 F.3d 885, 891 (8th Cir. 2009). The parties agree that substantive

Arkansas law applies to this diversity action. Pursuant to Arkansas law, we assess whether policy language is ambiguous by examining the plain meaning of the language in the context in which it is used. See Smith v. So. Farm Bureau Cas. Ins. Co., 114 S.W.3d 205, 206–07 (Ark. 2003). If the language in context is unambiguous, it is unnecessary to look beyond the policy or rely upon presumptions in either parties' favor in interpreting the policy. Id. at 206 ("Insurance contracts are to be construed strictly against the insurer, but where language is unambiguous, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy.").

We conclude the exclusion at issue is unambiguous on its face. The relevant language states simply "water or water-borne material below the surface of the ground." The phrase cannot be limited to naturally occurring water, as contrasted with water from a pipe, without grafting onto the phrase an unwritten, implicit limitation. But it is not appropriate to graft limitations onto otherwise plain and straightforward policy language. Corn v. Farmers Ins. Co., 430 S.W.3d 655, 660 (Ark. 2013) ("If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction."); Smith, 114 S.W.3d at 206 ("[T]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." (quoting So. Farm Bureau Cas. Ins. Co. v. Williams, 543 S.W.2d 467 (1976))). To advocate an opposite result, Bull essentially equates the facial breadth of the exclusion's plain language with ambiguity. Breadth and ambiguity are not synonymous, however, and there is nothing absurd or unclear about an insurer wholly excluding from coverage losses caused by all sources of water below the surface of the ground (or requiring separate riders to cover such losses).

Bull nevertheless argues we should find the language ambiguous because other courts have found identical language ambiguous. See, e.g., Adrian Assocs. Gen.

Contractors. v. Nat'l Sur. Corp., 638 S.W.2d 138, 140–41 (Tex. Ct. App. 1982) (examining language identical to that of Bull's policy and holding the exclusion did not apply to water from a pipe), aff'd, Nat'l Sur. Corp. v. Adrian Assocs., 650 S.W.2d 67 (Tex. 1983) (per curiam) (expressly approving without further comment the holding of the Texas Court of Appeals); Hatley v. Truck Ins. Exch., 495 P.2d 1196, 1197 (Or. 1972) ("Likewise, we think the exclusion of 'water below the surface of the ground' was intended to have the general meaning of 'subterranean waters,' whether percolating waters or underground streams."). According to Bull, it would be illogical for our court to declare the language unambiguous when other jurists, who presumably are neither irrational nor unreasonable, have found it ambiguous. His argument is not without appeal. We must apply substantive Arkansas law when assessing his argument, however, and the Arkansas Supreme Court has refused to hold that a disagreement between other courts over the meaning of a term necessarily shows the term is ambiguous. See Essex Ins. Co. v. Holder, 261 S.W.3d 456, 459–60 (Ark. 2007) (finding no ambiguity in the meaning of "accident" and stating, "While several jurisdictions have found CGL policies to be ambiguous and construed the ambiguity against the drafter, we find these cases unpersuasive").

Finally, Bull challenges the district court's reliance on two Arkansas Court of Appeals cases, Vanderburg v. Allstate Ins. Co., No. CA 04-731, 2005 WL 768704 (Ark. Ct. App. Apr. 6, 2005) (unpublished) and Carver v. Allstate Ins. Co., 76 S.W.3d 901, 904 (Ark. Ct. App. 2002). In both cases, the Arkansas Court of Appeals rejected a natural-source/man-made-source distinction when applying a water-related exclusion. Bull correctly notes that both of the cited cases interpreted policy language that excluded coverage for losses caused by "water . . . below the surface of the ground *regardless of its source*." Vanderburg, 2005 WL 768704 at *2 (emphasis added); Carver, 76 S.W.3d at 903. According to Bull, the use of the italicized policy language to explicitly clarify that all sources of water are covered by the exclusion distinguishes Vanderburg and Carver from the present case, where the extra language was not used.

We agree with Bull that the cited cases are distinguishable from the present case. We disagree with Bull, however, that the distinguishing features of <u>Vanderburg</u> and <u>Carver</u> somehow demonstrate the presence of an ambiguity in his policy. The fact that the drafter of the policies at issue in <u>Vanderburg</u> and <u>Carver</u> chose to be particularly careful and explicit, does not lead to the conclusion that there is an ambiguity in Bull's policy.

### III.  Conclusion

We affirm the judgment of the district court.

_____