**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

AUTO-OWNERS INSURANCE
COMPANY,

     Plaintiff Counter Defendant -
Appellee,

v.

EXCELSIOR WESTBROOK III, LLC,

     Defendant Counterclaimant -
Appellant.

No. 24-3127
(D.C. No. 2:22-CV-02360-HLT)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.
_____

In this insurance coverage declaratory judgment action, the insured,

Defendant-Appellant Excelsior Westbrook III, LLC ("Excelsior"), challenges the

district court's conclusion that a Tailored Protection Insurance Policy (the "Policy")

issued by Plaintiff-Appellee Auto-Owners Insurance Company ("Auto-Owners")

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

unambiguously excluded Excelsior's claim for water damage at its insured commercial property.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A.    *The Loss*

On July 21, 2022, Excelsior's insured commercial property sustained water damage from a broken pipe that supplied water to the property's fire suppression system. The break in the pipe was "underneath the floor of a stairwell and was within the footprint of the building." App. Vol. V at 1173. It is "uncontroverted (and obvious from the pictures) that the pipe was literally under the ground, or at least

---

[1] Initially, Excelsior also sought review of an order denying its request that the district court abstain from hearing this declaratory judgment action in favor of a Tennessee state court action that Excelsior initiated. But Excelsior later elected to abandon its abstention assignment of error, so we do not discuss it further herein. *See* ECF No. 37.

'several feet beneath the floor,' and that excavation was required to access it, including removal of the concrete floor, dirt, clay, and rocks." *Id.* at 1174.



*Id.* As the district court observed, "[i]t is uncontroverted that this picture 'shows the pipe's location in relation to the floor of the building and the excavation to reach the pipe.'" *Id.* At some point in its path, the pipe "ran beneath the footings of the building, but it's not clear where the break was located with regard to the footings." *Id.* The broken pipe caused water damage to the building's entire first floor.

Excelsior reported the loss to Auto-Owners the same day it occurred. Excelsior retained a general contractor for the repair and restoration work, and invoices to complete that work totaled $1,746,003.36. Auto-Owners investigated the loss through the property's third-party property management company, and the general contractor subsequently sent Auto-Owners a picture of the pipe.

On July 25, 2022, just four days after the loss, Auto-Owners sent Excelsior a reservation of rights indicating there were "potential coverage issues." *Id.* at 1176. "Between July 26, 2022, and August 18, 2022, the parties discussed coverage for the loss," and on August 18, Auto-Owners "issued a letter denying coverage, citing a water exclusion in the [P]olicy as the reason." *Id.*

### B.    The Policy

The Policy provides that Auto-Owners "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." App. Vol. III at 602. "Covered Property" includes the "Building," including "Completed additions," "Fixtures," and "permanently installed . . . Equipment." *Id.* Property excluded from this definition—in a section titled "Property Not Covered"—includes "Underground pipes, flues or drains."[2] *Id.* at 603.

### 1.    The Water Exclusion

The Policy states that "Covered Causes of Loss means Risks of Direct Physical Loss[3] unless the loss is" excluded under the Policy's enumerated "EXCLUSIONS" or

---

[2] The parties agree that under this provision—which is the only provision that focuses on the pipe's location—Auto-Owners has no obligation to cover the cost of replacing the pipe itself. The provision does not speak to water damage caused from water under the ground surface.

[3] Despite its capitalization, the phrase "Risks Of Direct Physical Loss" is not defined in the Policy and appears in it only once. *See* App. Vol. III at 625.

limited by the Policy's "LIMITATIONS" section. *Id.* at 625, 629. Under the

"EXCLUSIONS" subsection, the Policy provides that Auto-Owners

> **[W]ill not pay for loss or damage caused directly or indirectly by any of the following**. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.[4]
>
> . . .
>
> **g. Water**
>
>> **(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>>
>> **(2)** Mudslide or mudflow;
>>
>> **(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>>
>> **(4) Water under the ground surface pressing on, or flowing or seeping through**:
>>
>>> **(a) Foundations, walls, floors or paved surfaces**;
>>>
>>> **(b)** Basements, whether paved or not; or
>>>
>>> **(c)** Doors, windows or other openings[.]
>
> . . .
>
>> This exclusion applies regardless of whether any of the above, in Paragraphs **g.(1)** through **(5)** is caused by an act of nature or is otherwise caused.
>>
>> However, if any of the above in paragraphs **g.(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

---

[4] The Policy's clarification that the Water Exclusion bars coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" is referred to in legal usage as an "anti-concurrent cause provision," and we follow the parties' lead in using that term. App. Vol. III at 625.

*Id.* at 625–26 (emphasis added).

### 2.    The Wear and Tear or Rust Exclusion

In addition to the above exclusion (hereinafter, the "Water Exclusion"), the Policy separately excludes "loss or damage caused by or resulting from . . . Wear and [T]ear [or] Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself" (hereinafter, the "Wear and Tear or Rust Exclusion"). *Id.* at 626–27. But as an exception to this exclusion, the Policy provides that if a loss excluded thereunder "results in a 'specified cause of loss' or building glass breakage, we will pay for the loss or damage caused by that 'specified cause of loss' or building glass breakage." *Id.* at 627.

The Policy defines "specified causes of loss" as "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; **water damage**." *Id.* at 632 (emphasis added). The Policy defines "water damage" for purposes of the "specified causes of loss" definition as:

> [A]ccidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

*Id.* at 633.

6

### C.    The Litigation

After Auto-Owners issued its denial letter, Excelsior responded on August 26, 2022, with a letter disputing Auto-Owners' denial. On September 9, 2022, Auto-Owners replied, maintaining that the loss was excluded and informing Excelsior that Auto-Owners would be filing a declaratory judgment action in Kansas federal court to resolve the coverage issue.

That same day, as promised, Auto-Owners filed this action, asserting one claim for declaratory judgment that the "Policy provides no coverage" for the loss. App. Vol. I at 13–18. Excelsior later asserted counterclaims for (1) breach of contract, and (2) violation of the Kansas Unfair Trade Practices Act.

Following discovery, the parties filed cross motions for summary judgment.[5] In July 2024, the district court entered an order (1) granting Auto-Owners' motion for summary judgment on its sole declaratory judgment claim, and (2) denying Excelsior's motion for summary judgment on its breach of contract and unfair practices claims. On the central question of coverage for the loss, the district court accepted Auto-Owners' contention that the Water Exclusion applied because the broken pipe was indisputably under the ground, and repair of the pipe "required several feet of excavation as well as removal of the concrete floor, dirt, clay, and

---

[5] At the same time, Auto-Owners moved to exclude expert testimony proffered by Excelsior regarding the cause of the broken pipe, arguing both that the testimony was substantively excludable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and that Excelsior failed to timely disclose the experts. After granting summary judgment, the district court denied the motion to exclude as moot.

rocks." App. Vol. V at 1182–83. The court further found unrebutted evidence in the record to support Auto-Owners' contention that the water "seeped up" from the ground into the building as required for the loss to fall within the Water Exclusion. *Id.* at 1183 ("[I]t is undisputed that the broken pipe was under the surface of the ground, that water escaped the broken pipe under the surface of the ground, and that water then traveled above the surface of the ground and throughout the first floor of the building.").

The district court next concluded that the Water Exclusion's anti-concurrent cause provision rendered the specified cause of loss exception to the Wear and Tear or Rust Exclusion "immaterial." *Id.* at 1185. The court explained "that the purpose of [anti-concurrent cause provisions] is to allow an insurer to make clear that there is no coverage where an excluded cause of loss contributes to damage, even if a covered cause of loss <u>also</u> contributes to the damage." *Id.* The court reasoned that the anti-concurrent cause provision in the Policy meant that "if the Water Exclusion applies, [Auto-Owners] does not have to pay for that damage <u>even if</u> [Excelsior] can demonstrate that the damage also falls within the Specified Cause of Loss Exception" to the Wear and Tear or Rust Exclusion. *Id.* at 1186. This timely appeal followed.

## II.    DISCUSSION

### A.    *Applicable law*

"We review *de novo* a district court's decision to grant a motion for summary judgment." *Lindsey v. Hyler*, 918 F.3d 1109, 1113 (10th Cir. 2019). "Summary judgment becomes appropriate when there exists no genuine issue of material fact,

such that the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

The parties agree that Kansas law governs the contract. In Kansas, "[t]he language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties." *Cath. Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992). Courts "must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements." *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

Like many states, Kansas law requires that any ambiguity in an insurance agreement be construed in favor of the insured. *See Raymer*, 840 P.2d at 459. "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Id.* But "[c]ourts should not strain to find an ambiguity when common sense shows there is none," and "[a]n ambiguity does not exist merely because the parties disagree on the interpretation of the language." *Marshall*, 73 P.3d at 130.

"[T]he test to determine whether an insurance contract is ambiguous is not [based on] what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bureau Mut. Ins. v.*

9

*Winters*, 806 P.2d 993, 996 (Kan. 1991); *see Corp. Lakes Prop., LLC v. AmGuard Ins. Co.*, 649 F. Supp. 3d 1143, 1147 (D. Kan. 2023) (same, applying Kansas law). But "[t]his does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage." *Marshall*, 73 P.3d at 130.

In Kansas, the insured "has the burden to show the loss falls within a coverage provision while the insurer has the burden to prove the loss is excepted or excluded by a specific provision of the policy." *Shelter Mut. Ins. Co. v. Williams By and Through Williams*, 804 P.2d 1374, 1383 (Kan. 1991). "As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed." *Marshall*, 73 P.3d at 130. "To restrict or limit coverage, an insurer must use clear and unambiguous language." *Id.*

### B.    *Whether the Policy is ambiguous*

In seeking reversal of summary judgment, Excelsior claims the district court wrongly found that the Policy unambiguously excluded the loss, advancing two distinct arguments in support. We review each argument in turn and conclude that neither establishes an ambiguity in the Policy.

First, Excelsior argues that there is a conflict "between the Policy's Water [E]xclusion" and the inclusion of "water damage" within the "specified cause of loss" exception to the Wear and Tear or Rust Exclusion. Appellant's Br. at 11, 14, 22. Put another way, Excelsior portrays the Water Exclusion and the inclusion of "water damage" within the "specified cause of loss" exception to the Wear and Tear

10

or Rust Exclusion as presenting "two competing provisions—one providing coverage for this loss (the 'water damage' coverage), and one that . . . precludes coverage for this loss (the Water [E]xclusion)." Appellant's Br. at 15. By framing the Water Exclusion and the "specified cause of loss" exception to another exclusion as "two competing provisions," Excelsior reasons that the two provisions conflict, creating an ambiguity that must be construed in its favor. *Id.*

The problem with Excelsior's "conflict ambiguity" argument is that the two provisions on which it relies are incapable of conflicting as a matter of straightforward contract interpretation. Both the Water Exclusion and the Wear and Tear or Rust Exclusion contain exceptions, but the exceptions for each exclusion are different. Losses excluded under the Water Exclusion are nevertheless covered if they "result[] in fire, explosion or sprinkler leakage." App. Vol. III at 626. And losses excluded under the Wear and Tear or Rust Exclusion are nevertheless excepted from that exclusion if the loss "results in a 'specified cause of loss.'" *Id.* at 627. But as the district court explained, "the Specified Cause of Loss Exception is <u>not</u> an exception to the Water Exclusion and therefore does not impact its application." App. Vol. V at 1194. That is, the two provisions operate entirely independently and cannot conflict with one another. *See Secura Ins. v. 33 Allenton Venture, L.L.C.*, 985 N.W. 2d 109, 115 (Wis. Ct. App. 2022) ("[T]he exception to the wear and tear exclusion simply does not affect the water exclusion."); *Midwest Fam. Mut. Ins. Co. v. Hari Om Rudra Hotel, LLC*, 416 F. Supp. 3d 853, 865 (W.D. Mo. 2019) ("[A]n exception to an exclusion does not create coverage [where a distinct exclusion applies].");

11

*Wisteria Props. LLC v. Ohio Sec. Ins. Co.*, 2021 WL 6882154, at \*6 (C.D. Cal. Nov. 17, 2021) (explaining that application of a water exclusion cannot be thwarted by an exception to "*another* exclusion").

Excelsior does not dispute the general principle that an exception to an exclusion does not create coverage, but instead replies that the Policy's treatment of the "specified cause of loss" exception more closely resembles an affirmative grant of coverage than it does an exception to an exclusion. *See* Appellant's Br. at 20 ("It is significant that each time the Policy references specified causes of loss, it states that Auto-Owners '**will pay** for loss or damages caused by that specified cause of loss.'"). Excelsior contrasts this "will pay" language with an exception to the Policy's exclusion of coverage for certain bodily injuries, which declares that "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." *Id.* at 20 (quoting App. Vol. III at 661).

Excelsior cites no authority for the proposition that variations in language between exceptions to exclusions should cause us to view some as exceptions and others as affirmative grants of coverage. And even if such variations in the language creating exceptions to exclusions were important, Excelsior neglects to explain why we should overlook that the "we will pay" language is preceded in each instance by "however," clearly indicating that what follows is a variance from the previously articulated exclusion. For example, and as relevant here, in the Wear and Tear or Rust Exclusion, the Policy first expressly provides that losses caused by Wear and Tear or Rust are excluded. The provision then continues, "However, if an excluded

cause of loss that is listed in [the Wear and Tear or Rust Exclusion] results in a 'specified cause of loss' . . . we will pay for the loss or damage caused by that 'specified cause of loss.'" App. Vol. III at 627. To conclude that a reasonable insured could expect that this language creates a new, policy-wide grant of coverage rather than an exception to a single exclusion would be to credit "the insured's uninformed expectations of the policy's coverage" in contravention of Kansas law. *Marshall*, 73 P.3d at 130. A fair reading of the Policy limits the exception for a "specified cause of loss" only to the exclusions where the phrase appears.[6]

In short, we agree with the district court that as a matter of law, no "conflict ambiguity" exists between the Water Exclusion and the "specified cause of loss" exception to the Wear and Tear or Rust Exclusion.[7]

---

[6] In addition to the Wear and Tear or Rust Exclusion, the Policy also provides a "specified cause of loss" exception to an exclusion for losses caused by the "[p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot or dry rot." App. Vol. III at 626.

[7] Our conclusion that no ambiguity arises between the Water Exclusion and "specified cause of loss" exception to the Wear and Tear or Rust Exclusion is bolstered by the Policy's inclusion of an anti-concurrent cause provision. Recall that under the Policy, losses "caused directly or indirectly by any of the" enumerated exclusions are "excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." App. Vol. III at 625. This so-called anti-concurrent cause provision is a judicially recognized and enforceable way to foreclose an insured's ability to evade the effect of an exclusion by attempting to recharacterize (or add to) the cause(s) of the loss. Put differently, such a provision "denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 425 (5th Cir. 2007); *Ski Chalet Vill. Owners Club, Inc. v. Emps. Mut. Cas. Co.*, 2016 WL 6892759, at *3 (E.D. Tenn. Nov. 22, 2016) (explaining that ordinarily "there is insurance coverage where an excluded cause of loss and a covered cause combine to

13

Next, Excelsior asserts that the Water Exclusion itself is ambiguous. Specifically, it claims that a reasonable insured would view the language "Water under the ground surface" as encompassing only those water sources that are entirely independent of, and deeper in the ground than, any portion of the insured premises, including its "footings, aggregate, pipes, and pea gravel surrounding those pipes that were constructed as part of the building's infrastructure." Appellant's Br. at 23–24.

Excelsior's argument that the Water Exclusion is ambiguous on its own is foreclosed by Kansas law. In *Krug v. Millers' Mutual Insurance Association of Illinois*, 495 P.2d 949, 955 (Kan. 1972)—a precedent that informs us in this diversity action governed by Kansas law—the Kansas Supreme Court interpreted a functionally identical water exclusion that excluded losses caused by "water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors."[8] The Kansas Supreme Court concluded that a loss caused by "water which leaked from [a] broken water [supply] line"—a pipe that carried water from the city's main

---

cause some damage," but that "[a]n insurer may contract around that possibility [] through use of an anti-concurrent cause provision, such that there is no coverage for damage that is caused in any manner by an excluded cause regardless of any other concurring or contributing causes"). If the Water Exclusion applies, the anti-concurrent cause provision operates to bar coverage *even if* the preceding cause of the water seepage was, as Excelsior maintains, wear and tear or rusting of the pipe.

[8] Recall that the Policy here defines the Water Exclusion as "Water under the ground surface pressing on, or flowing or seeping through: [] Foundations, walls, floors, or paved surfaces; [] Basements, whether paved or not; or [] Doors, windows, or other openings[.]" App. Vol. III at 626.

to the insured's home—fell within the water exclusion. *Id.* The Kansas Supreme Court had no trouble rejecting the insured's argument that this exclusion contemplated losses flowing only from "ground water" as defined as a "high underground water table," instead holding that the leak from the underground water supply line "was water below the surface of the ground within the meaning of the exclusion." *Id.* This was so even though the policy in *Krug* did not contain a provision, like the Policy here, clarifying that such losses were excluded whether naturally or otherwise caused. *See id.*; *Bull v. Nationwide Mut. Fire. Ins. Co.*, 824 F.3d 722, 725 (8th Cir. 2016) (per curiam) (finding water exclusion unambiguous notwithstanding the omission of a clause clarifying the exclusion applies whether naturally or otherwise caused, because the "relevant language states simply 'water or water-borne material below the surface of the ground," which language "cannot be limited to naturally occurring water, as contrasted with water from a pipe, without grafting onto the phrase an unwritten, implicit limitation").

More critically, the water supply line in *Krug* did not meaningfully differ from the broken water supply line in this case. As here, the pipe in *Krug*—constructed, as it was, for the purpose of transporting water from a main to a home—was undeniably "constructed as part of the building's infrastructure." Appellant's Br. at 24. Indeed, in *Krug*, the court credited the factual contention that the insured's "plumbing system started at the city water main and the leak occurred within the plumbing system on the premises," bringing the water line within the ambit of the policy. 495 P.2d at 954. Further, the pipe in *Krug* ran from the main, and across the insured's property before

entering the home "through the foundation wall" of the home, *id*. at 951, and thus

could not have run below the home's footers as Excelsior maintains would be

required for the water released from the pipe to be considered "[w]ater under the

ground surface." App. Vol. III at 626.[9]

It is true, as Excelsior notes, that the precise location of the break in the pipe

was "at a point ten to fifteen feet from the side of the" premises. *Krug*, 495 P.2d

at 951. But this fact does not materially change the analysis. The Water Exclusion

contains nothing to suggest that the lateral location of the break affects its

applicability. To the contrary, the Water Exclusion focuses only on whether the loss

was caused, in any degree and irrespective of contributing causes, by water—released

naturally or otherwise—"under the ground surface pressing on, or flowing or seeping

through . . . Foundations, walls, floors, or paved surfaces." App. Vol. III at 626.

Those conditions are met here, and we can discern no reasonable interpretation of the

Water Exclusion that would render it inapplicable simply because the break in the

---

[9] At oral argument, Excelsior argued that "[w]ater under the ground surface" excludes water released from any part of the ground that was excavated as part of construction of the building, even if earth material was subsequently replaced to fully cover the location of the water release. Oral Argument at 3:10-3:45. This is so, Excelsior asserted, because once land has been excavated, it changes the "ground surface" and thereby elevates any excavated area *above* the "ground surface." *Id.* We have found no case law supporting this argument, and we are unconvinced that a reasonable insured would believe that the "ground surface" extends to the lowest point at which land has ever been excavated, even if such excavation were later backfilled with multiple feet of soil or aggregate. Indeed, accepting this argument would render superfluous the Water Exclusion's clarification that it applies whether the water was released naturally "or otherwise," since any man-made source of "[w]ater under the ground surface" would necessarily have been laid through excavation.

pipe occurred under the foundation rather than ten to fifteen feet away from the premises.

In short, we detect no ambiguity in the application of the Water Exclusion to the facts of this loss, and thus affirm the district court's declaratory judgment that the Water Exclusion bars coverage.

### III.    CONCLUSION

For the reasons stated, we AFFIRM the district court's grant of summary judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge